Debbra Jo KENDRICK,
Plaintiff/Appellee,

v.

Mitchell Gene KENDRICK,
Defendant/Appellant.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Nov. 16, 1994.

Brad W. Hornsby, Bullock, Fly & McFarlin, Murfreesboro, for appellant.

Trudy McKelvey Edwards, Floyd Don Davis, P.C., Winchester, for appellee.

## OPINION

KOCH, Judge.

This appeal involves the right of a divorcée to receive a portion of her former spouse's nonvested military pension. After over ten years of marriage, the wife sued the husband for divorce in the Chancery Court for Franklin County. The trial court granted the wife a divorce and awarded her a portion of the husband's nonvested military pension as part of the division of the marital property. The husband asserts on this appeal that his nonvested military pension should not have been considered marital property. We have determined that the wife is entitled to a portion of the husband's military pension when and if he begins to receive it and that her share should be based on the husband's salary at the time of the divorce.

### I.

Mitchell Gene Kendrick enlisted in the United States Air Force in July 1980. He married Debbra Jo Kendrick in August 1981. By 1991 he had attained the rank of technical sergeant and had decided to make the Air Force his career. At that time, Sergeant and Ms. Kendrick were stationed at Arnold Air Force Base in Tullahoma where Sergeant Kendrick served as chief of electrical operations and maintenance.

The Kendricks separated in September 1991, and Ms. Kendrick filed for divorce in the Chancery Court for Franklin County approximately one month later. Following a hearing in April 1992, the trial court granted Ms. Kendrick a divorce and awarded her custody of the parties' two children and modest rehabilitative spousal support. The trial court also divided the marital estate but reserved dividing Sergeant Kendrick's military pension. Following another hearing in May 1992, the trial court determined that the increase in the value of Sergeant Kendrick's pension during the marriage was marital property and awarded Ms. Kendrick fifteen percent (15%) of Sergeant Kendrick's pension "when paid periodically or in a lump sum."

This appeal focuses on the trial court's decision to award Ms. Kendrick a portion of Sergeant Kendrick's nonvested military retirement benefits. Sergeant Kendrick asserts that these benefits were not marital property and, if they were, that Ms. Kendrick should not receive any portion of the retirement benefits earned after the divorce.

### II.

Pension rights accrued during marriage play an increasingly prominent role in today's divorce proceedings. Many married couples consider their pensions as substitutes for savings or investments. *In re Marriage of Grubb,* 745 P.2d 661, 664–65 (Colo.1987); *Christmas v. Christmas,* 787 P.2d 1267, 1268 (Okla.1990). Accordingly, pension rights frequently comprise a major portion of many marital estates and often represent one of the parties' most valuable assets. *Patric v. Patric,* App. No. 03–A–01–9111–CH–00389, slip op. at 4, 17 T.A.M. 12–20, 6 T.F.L.L. 6–4, 1992 WL 32634 (Tenn.Ct.App. Feb. 25, 1992); Janet A. Johnson, *Valuation of Marital Property,* 3 Fam.L. & Prac. (MB) § 36.13 (Apr.1993) ("Johnson").

Pension rights are property because they are a form of deferred compensation for work already performed. *Batson v. Batson,* 769 S.W.2d 849, 857 (Tenn.Ct.App.1988);

*Hunley v. Hunley,* App. No. 88–206–II, slip op. at 7, 13 T.A.M. 52–4, 3 T.F.L.L. 3–20, 1988 WL 123956 (Tenn.Ct.App. Nov. 23, 1988); *Simmons v. Hitt,* 546 S.W.2d 587, 592 (Tenn.Ct.App.1976). Accordingly, an overwhelming majority of state courts now treat pension rights as marital property. Grace G. Blumberg, *Intangible Assets: Recognition and Valuation,* 2 Valuation & Distribution of Marital Prop. (MB) § 23.02[3][a] (1988) ("Blumberg"); Charles C. Marvel, Annotation, *Pension or Retirement Benefits as Subject to Award or Division by Court in Settlement of Property Rights Between Spouses,* 94 A.L.R.3d 176 § 8(a) (1979).

The treatment of pension rights as marital property subject to equitable division is controlled by the law of the state where the divorce proceeding is pending. Thus, this appeal requires us to consider three issues in light of Tennessee's statutory and case law. The first issue is whether nonvested pension rights are marital property. The second issue is whether military pension rights must be treated differently than other private or public pension rights. The third issue concerns the manner in which these pension rights should be valued and distributed if the pension rights involved in this case are marital property. This court has addressed similar issues in the past; however, most of our decisions remain unpublished.

### III.

We first consider whether pension interests are marital property under Tennes-

see law. The question is complicated by the fact that there are many types of pensions and interests in pensions. Without cataloging each possible type of interest, we have concluded that pension interests that accrue during a marriage should be considered as marital property regardless of whether the interest is vested or nonvested,[1] mature or unmature,[2] or contributory or noncontributory.[3] The only requirement should be that the employee spouse acquire the interest during the marriage.

### A.

Tennessee courts have had statutory authority to distribute marital property in divorce cases for over thirty years. Prior to 1983, Tenn.Code Ann. § 36–825 (amended 1983) empowered the courts to

[A]djust and adjudicate the respective rights and interests of the parties in all jointly owned property, so as to preserve for each or either party, that portion of such jointly owned property as may be just and reasonable under the facts and circumstances of the case.

Both vested and nonvested pension rights figured into the division of marital property under this statute. *Hensley v. Hensley,* 631 S.W.2d 131, 134 (Tenn.Ct.App.1981) (nonvested pension rights are "economic circumstances" affecting the division of marital

---

1. A pension right becomes vested when an employee completes the basic period of employment required to receive a pension when he or she reaches retirement age. *In re Marriage of Grubb,* 745 P.2d at 665; *George v. George,* 115 N.C.App. 387, 444 S.E.2d 449, 450 (1994). A vested pension right cannot be forfeited and survives discharge or voluntary termination prior to retirement. *Bartley v. Bartley,* App. No. 88–130–II, slip op. at 8, 14 T.A.M. 5–9, 3 T.F.L.L. 4–22, 1988 WL 136674 (Tenn.Ct.App. Dec. 21, 1988); *In re Marriage of Brown,* 15 Cal.3d 838, 126 Cal.Rptr. 633, 635, 544 P.2d 561, 563 (1976); Blumberg, *supra,* 2 Valuation & Distribution of Marital Prop. § 23.02[2][a]. A pension right need not be matured in order to be vested. *Rakestraw v. Rakestraw,* C.A. No. 113, slip op. at 4, 15 T.A.M. 9–13, 4 T.F.L.L. 5–4, 1990 WL 6363 (Tenn.Ct. App. Jan. 31, 1990); *Alton v. Alton,* Henry Eq. No. 2, slip op. at 2, 13 T.A.M. 21–6, 2 T.F.L.L. 8–13, 1988 WL 31773 (Tenn.Ct.App. Apr. 5, 1988).

2. A pension interest is mature when an employee has satisfied all the conditions required to receive a retirement benefit and has an immediate right to that benefit. *Janssen v. Janssen,* 331 N.W.2d 752, 753 (Minn.1983); Blumberg, *supra,* 2 Valuation & Distribution of Marital Property § 23.02[2][b]; Johnson, *supra,* 3 Fam.L. & Prac. § 36.13. Thus, a vested right matures when an employee reaches retirement age and elects to retire. *In re Marriage of Jones,* 812 P.2d 1152, 1155 n. 3 (Colo.1991).

3. A noncontributory pension is one that is funded solely through employer contributions rather than through deductions from an employee's salary or compensation. *Carpenter v. Carpenter,* 150 Ariz. 62, 722 P.2d 230, 232 (1986); *Hatcher v. Hatcher,* 129 Mich.App. 753, 343 N.W.2d 498, 503 (1983).

property); *Whitehead v. Whitehead,* C.A. No. 85, slip op. at 16, 6 T.A.M. 13–10 (Tenn. Ct.App. Feb. 4, 1981) (vested military retirement pay is marital property subject to division), *rev'd,* 627 S.W.2d 944 (Tenn.1982).

In 1983, the General Assembly amended the statute governing the distribution of marital property in divorce cases.[4] According to its House sponsor, the legislation's purposes were to codify existing case law, to define marital property more clearly, and to recognize homemakers' contributions. For the first time, the statute recognized a distinction between "marital" and "separate" property and specifically directed the courts to "equitably divide, distribute or assign the marital property without regard to marital fault in proportions as the court deems just."

For the past decade Tenn.Code Ann. § 36–4–121 has governed the classification of property interests for the purpose of dividing the marital estate in divorce cases. Tenn.Code Ann. § 36–4–121(b)(1) broadly defines "marital property" as follows:

(A) "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date.

(B) "Marital property" includes income from, and any increase in value during the marriage, of property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation and the value of vested pension, retirement or other fringe benefit rights accrued during the period of the marriage.

(C) As used in this subsection, "substantial contribution" may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine.

(D) Property shall be considered marital property as defined by this subsection for the sole purpose of dividing assets upon divorce and for no other purpose.[5]

At the same time, Tenn.Code Ann. § 36–4–121(b)(2) defines "separate property" as

(A) All real and personal property owned by a spouse before marriage;

(B) Property acquired in exchange for property acquired before the marriage;

(C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1); and

(D) Property acquired by a spouse at any time by gift, bequest, devise or descent.

**B.**

Tenn.Code Ann. § 36–4–121(b)(1)(B) provides that vested pension rights are marital property. Accordingly, this court has consistently treated vested pension rights, even when they have not matured, as marital property subject to division. *Cushenberry v. Cushenberry,* App. No. 01–A–01–9006–CH–00199, slip op. at 4, 16 T.A.M. 34–13, 5 T.F.L.L. 11–12, 1991 WL 136255 (Tenn.Ct. App. July 26, 1991); *Alton v. Alton, supra,* slip op. at 2; *Rakestraw v. Rakestraw, supra,*

---

**4.** Act of May 12, 1983, ch. 414, § 4, 1983 Tenn. Pub.Acts 798, 800 (codified as amended at Tenn. Code Ann. § 36–4–121 (1991)).

**5.** The current statutory definition of "marital property" contains later amendments concerning the date of the property's acquisition, *see* Act of April 4, 1988, ch. 735, § 1, 1988 Tenn.Pub.Acts 478, as well as the expanded definition of "substantial contribution" found in Tenn.Code Ann. § 36–4–121(b)(1)(C). *See* Act of March 30, 1987, ch. 122, § 1, 1987 Tenn.Pub. Acts 167.

slip op. at 4; *Bartley v. Bartley, supra,* slip op. at 8.

The status of nonvested pension rights is less clear. The Tennessee Supreme Court has recognized the trend in other jurisdictions toward treating nonvested pension rights as marital property. *Towner v. Towner,* 858 S.W.2d 888, 891 (Tenn.1993). In addition, this court has held that a pension's vesting has no bearing on its classification as marital property, *Marzo v. Marzo,* C.A. No. 917, slip op. at 8, 9 T.A.M. 9–27 (Tenn.Ct. App. Jan. 5, 1984), and has treated nonvested pension rights as marital property on at least two other occasions. *Cohen v. Cohen,* App. No. 02–A–01–9303–CV–00050, slip op. at 2–3, 19 T.A.M. 9–14, 8 T.F.L.L. 6–16, 1994 WL 37751 (Tenn.Ct.App. Feb. 7, 1994); *Patric v. Patric, supra,* slip op. at 11.

Nonvested pension rights are not specifically included within the definition of marital property. Notwithstanding our apparent inclination to treat these rights as marital property, we have yet to decide whether the General Assembly, by specifically including vested pension rights in Tenn.Code Ann. § 36–4–121(b)(1)(B), placed nonvested pension rights beyond the reach of the broad definition of marital property in Tenn.Code Ann. § 36–4–121(b)(1)(A).

■ Our search for legislative purpose begins with the language of the statute itself. *Neff v. Cherokee Ins. Co.,* 704 S.W.2d 1, 3 (Tenn.1986). If the General Assembly has spoken directly to the issue, and if the statute is clear, our examination need proceed no further because the courts must give effect to unambiguous statutes. *Roddy Mfg. Co. v. Olsen,* 661 S.W.2d 868, 871 (Tenn.1983); *Anderson v. Outland,* 210 Tenn. 526, 532, 360 S.W.2d 44, 47 (1962).

■ If, however, the legislative purpose is unclear, then our role is to ascertain and to give the fullest possible effect to the statute's purpose without unduly restricting or extending its coverage. *National Gas Distribs., Inc. v. State,* 804 S.W.2d 66, 67 (Tenn. 1991); *Davenport v. Chrysler Credit Corp.,* 818 S.W.2d 23, 27 (Tenn.Ct.App.1991). We may elucidate a statute's purpose by consulting its legislative history and by applying the applicable rules of statutory construction. *Chapman v. Sullivan County,* 608 S.W.2d 580, 582 (Tenn.1980) (legislative history); *O.H. May Co. v. Anderson,* 156 Tenn. 216, 219–20, 300 S.W. 12, 14 (1927) (rules of statutory construction).

Since the General Assembly has not addressed the status of nonvested pension interests directly, we must resort to the rules of construction and to Tenn.Code Ann. § 36–4–121's legislative history. Both the statute's language and its legislative history support the conclusion that the General Assembly has not prevented the courts from distributing nonvested pension rights accrued during the marriage as marital property.

The statutory definition of marital property begins with a broad, inclusive definition stating that marital property includes "all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the divorce hearing." Tenn.Code Ann. § 36–4–121(b)(1)(A). Then the statute specifically provides that marital property "includes ... the value of vested pension, retirement or other fringe benefit rights accrued during the period of the marriage." Tenn.Code Ann. § 36–4–121(b)(1)(B).

■ The broad, general definition of marital property in Tenn.Code Ann. § 36–4–121(b)(1)(A) precedes the specific examples of marital property in Tenn.Code Ann. § 36–4–121(b)(1)(B). Thus, it does not invite an application of the rule of ejusdem generis.[6] The more appropriate rule of construction is that a broad statutory definition followed by language stating that the definition "in-

---

6. The rule of ejusdem generis provides that when general words follow specific words which limit a statute's scope, the general words will ordinarily be construed to apply to things of the same class or kind as those indicated by the specific words. *Nance v. Westside Hosp.,* 750 S.W.2d 740, 743 (Tenn.1988).

cludes" specific items conveys the understanding that there are other includable items that have not been specifically mentioned. Norman J. Singer, *Statutes and Statutory Construction* § 47.07, at 152 (rev. 5th ed. 1992).

When used in conjunction with a general definition, the term "includes" is a term of enlargement, not limitation. *Argosy Ltd. v. Hennigan*, 404 F.2d 14, 20 (5th Cir.1968); *Pic 'N Pay Stores, Inc. v. Jessee*, C.A. No. 72, slip op. at 6, 10 T.A.M. 21–16 (Tenn.Ct. App. Apr. 23, 1985), *perm. app. denied* (Tenn. June 17, 1985). Thus, the use of the term "includes" in a statutory definition indicates that the enumerated items that follow are illustrative, not exclusive. *Puerto Rico Maritime Shipping Auth. v. I.C.C.*, 645 F.2d 1102, 1112 n. 26 (D.C.Cir.1981).

This rule of statutory construction leads to the conclusion that the property interests identified in Tenn.Code Ann. § 36–4–121(b)(1)(B) are simply illustrative of the types of intangible property that may be classified as marital property under Tenn. Code Ann. § 36–4–121(b)(1)(A). Accordingly, the specific mention of vested pension rights in Tenn.Code Ann. § 36–4–121(b)(1)(B) does not indicate that the General Assembly decided against treating nonvested pension interests as marital property.

The inclusion of a definition of "separate property" in Tenn.Code Ann. § 36–4–121(b)(2) provides additional textual confirmation for treating nonvested pension interests as marital property. All property interests owned or possessed by a married couple must be either marital or separate property. They cannot be both, and they cannot be neither. Since the definition of separate property follows the general definition of marital property, property interests that do not fit the definition of separate property should be considered to be marital property. *Sheely v. McLemore*, 153 Tenn. 498, 503, 284 S.W. 61, 62 (1926) (where a statute sets out a general rule followed by specific exceptions, the courts will not narrow the former nor enlarge the latter by implication).

The Supreme Court of Minnesota had occasion to construe almost identical statutory definitions of marital and separate property in the context of a police officer's nonvested pension. After finding that pension rights were marital property, the court held that the statute's reference to vested pension rights did not indicate that the legislature excluded nonvested pension rights from consideration as marital property. *Janssen v. Janssen*, 331 N.W.2d at 755–56. Thus, the court found that treating the nonvested pension rights as marital property was harmonious with the statutory assumption that each spouse contributed to the acquisition of property while they lived together as husband and wife.

Tenn.Code Ann. § 36–4–121's legislative history supports this textual analysis. It contains no indication that the General Assembly intended to differentiate between vested and nonvested pensions. To the contrary, the legislation's House sponsor stated that his purpose was to provide a clear definition of marital property and to recognize homemakers' contributions to a marriage. Treating a nonvested pension as marital property is consistent with both goals. Therefore, like the vast majority of states, we hold that nonvested pension rights accruing during a marriage are marital property subject to equitable division in divorce cases in accordance with Tenn.Code Ann. § 36–4–121.

## IV.

We now consider whether the courts dividing marital property in divorce cases must treat military pension rights differently than other private or public pension rights. Except for a brief period from 1981 to 1982, military pension rights have always been treated like any other pension right. Tenn. Code Ann. § 36–4–121 does not alter this approach.

In 1981 the United States Supreme Court held that state courts could not include military pensions as part of their division of marital property in divorce cases. *McCarty*

*v. McCarty*, 453 U.S. 210, 233, 101 S.Ct. 2728, 2741, 69 L.Ed.2d 589 (1981). Soon thereafter, both the Tennessee Supreme Court and this court stopped treating interests in military pensions as marital property. *Whitehead v. Whitehead*, 627 S.W.2d 944, 945 (Tenn.1982); *Guinn v. Guinn*, C.A. No. 486, slip op. at 7, 6 T.A.M. 41–6 (Tenn.Ct.App. Aug. 11, 1981).

■ The *McCarty v. McCarty* decision precipitated a public outcry. Within one year, the Congress effectively reversed the decision with regard to nondisability pensions by enacting the Uniformed Services Former Spouses' Protection Act ("USFS-PA").[7] The USFSPA does not create an independent right under state law. Instead, it provides that

> Subject to the limitations of this section, a court may treat disposable retired pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.

10 U.S.C. § 1408(c) (Supp. V 1993). The USFSPA permits, but does not require, state courts to consider nondisability military pensions as marital property subject to equitable division. *Ex parte Vaughn*, 634 So.2d 533, 536 (Ala.1993); *In re Marriage of Gallo*, 752 P.2d 47, 50 (Colo.1988).[8]

■ The purpose of the USFSPA is to restore the status quo existing before the *McCarty v. McCarty* decision. *Bullock v. Bullock*, 354 N.W.2d 904, 907 (N.D.1984). State law still controls how a military pension should be divided. *DeLoach v. DeLoach*, 590 So.2d 956, 966 (Fla.Dist.Ct.App.1991); *In re Marriage of Brown*, 225 Ill.App.3d 733, 167 Ill.Dec. 379, 383, 587 N.E.2d 648, 652 (1992); *Newman v. Newman*, 558 So.2d 821, 823 (Miss.1990). Forty-eight states have specifically addressed the question of the divisibility of military pensions. Fifteen states treat vested military pensions as marital property but have not ruled definitively on the divisibility of nonvested military pensions.[9] Twenty-eight other states classify both vested and nonvested military pensions as marital property.[10] Only four states that classify vested military pensions as marital property have

**7.** Uniformed Services Former Spouses' Protection Act, Pub.L. No. 97–252, 96 Stat. 718, 730 (codified as amended in several sections of 10 U.S.C.). The House Conference Report states that the Act "would have the effect of reversing the decision of the United States Supreme Court in the case of *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981)." H.R.Rep. No. 749, 97th Cong., 2d Sess. (1982), *reprinted in* 1982 U.S.C.C.A.N. 1569, 1570. The United States Supreme Court later held that the USFSPA does not apply to disability benefits. *Mansell v. Mansell*, 490 U.S. 581, 594–95, 109 S.Ct. 2023, 2032, 104 L.Ed.2d 675 (1989).

**8.** The Senate Report states that nothing in 10 U.S.C. § 1408(c) "requires any division; it leaves that issue up to the courts applying community property, equitable distribution or other principles of marital property determination and distribution." S.Rep. No. 502, 97th Cong., 2d Sess. (1982), *reprinted in* 1982 U.S.C.C.A.N. 1596, 1611.

**9.** *Ex parte Vaughn*, 634 So.2d 533, 536 (Ala. 1993); *Stephens v. Stephens*, 22 Conn.App. 337, 577 A.2d 303, 304 (1990); *Griggs v. Griggs*, 107 Idaho 123, 686 P.2d 68, 72 (1984); *Rearden v. Rearden*, 568 So.2d 1111, 1114 (La.Ct.App.1990); *Lunt v. Lunt*, 522 A.2d 1317, 1318 (Me.1987);

*Andresen v. Andresen*, 317 Md. 380, 564 A.2d 399, 401 (1989); *McMahon v. McMahon*, 31 Mass. App. 504, 579 N.E.2d 1379, 1382 (1991); *Keen v. Keen*, 194 Mich.App. 72, 486 N.W.2d 105, 106 (1992); *Mortenson v. Mortenson*, 409 N.W.2d 20, 22 (Minn.Ct.App.1987); *Murphy v. Murphy*, 763 S.W.2d 237, 239 (Mo.Ct.App.1988); *Randol v. Randol*, 849 P.2d 1118, 1119 (Okla.Ct.App.1993); *In re Marriage of Maidel*, 108 Or.App. 702, 816 P.2d 1206, 1207 (1991); *Radigan v. Radigan*, 465 N.W.2d 483, 486 (S.D.1991); *In re Marriage of Bocanegra*, 58 Wash.App. 271, 792 P.2d 1263, 1266 (1990); *Thorpe v. Thorpe*, 123 Wis.2d 424, 367 N.W.2d 233, 234 (1985).

**10.** *Root v. Root*, 851 P.2d 67, 68 (Alaska 1993); *Van Loan v. Van Loan*, 116 Ariz. 272, 569 P.2d 214, 216 (1977); *Jones v. Stevenson*, 149 Cal. App.3d 560, 197 Cal.Rptr. 25, 27 (1983) (dicta); *In Marriage of Hunt*, 868 P.2d 1140, 1142 (Colo. Ct.App.1993); *Memmolo v. Memmolo*, 576 A.2d 181, 182 (Del.1990) (dicta); *Salazar v. Salazar*, 583 So.2d 797, 797 (Fla.Dist.Ct.App.1991); *Holler v. Holler*, 257 Ga. 27, 354 S.E.2d 140, 141 (1987) (dicta); *Linson v. Linson*, 1 Haw.App. 272, 618 P.2d 748, 751 (1980); *In re Marriage of Korper*, 131 Ill.App.3d 753, 86 Ill.Dec. 766, 767, 475 N.E.2d 1333, 1336 (1985); *In re Marriage of Fuchser*, 477 N.W.2d 864, 865 (Iowa 1991); *In re Marriage of Harrison*, 13 Kan.App.2d 313, 769

declined to give nonvested pensions the same treatment.[11] One state apparently does not treat military pensions as marital property.[12]

■ The passage of the USFSPA undermined the legal foundation of the Tennessee Supreme Court's *Whitehead v. Whitehead* decision. *Thomas v. Thomas,* C.A. No. 39, slip op. at 4, 12 T.A.M. 21–4, 1 T.F.L.L. 8–4, 1987 WL 9164 (Tenn.Ct.App. Apr. 10, 1987). Except for the limitations in the USFSPA itself, we find that vested and nonvested military pension rights should be valued and distributed using the same principles and procedures used to value and distribute other public and private pension rights.

### V.

■ Concluding that both vested and nonvested interests in military pensions are marital property does not complete our task. We must still determine how Sergeant Kendrick's nonvested pension interest should be valued and distributed. We have determined that Ms. Kendrick should receive a portion of Sergeant Kendrick's retirement pay when and if he receives it and that her share should be based on the number of years of service credit Sergeant Kendrick earned during the marriage and on Sergeant Kendrick's salary at the time of the divorce.

### A.

■ Any procedure used to value and distribute pension rights must be consistent with Tenn.Code Ann. § 36–4–121. This court has recognized four principles to assist in the process. First, pension rights accrued during a marriage will be classified as marital property even though the non-employee spouse did not make direct contributions to the increase in the pension's value.[13] Second, only pension rights accruing during the marriage will be considered marital property.[14] Third, the difficulty in valuing pension rights has no bearing on the classification of

P.2d 678, 679–80 (1989); *Poe v. Poe,* 711 S.W.2d 849, 855–56 (Ky.Ct.App.1986); *Hemsley v. Hemsley,* 639 So.2d 909, 915 (Miss.1994); *Barker v. Barker,* 264 Mont. 110, 870 P.2d 86, 90 (1994); *Ray v. Ray,* 222 Neb. 324, 383 N.W.2d 752, 754 (1986); *Halliday v. Halliday,* 134 N.H. 388, 593 A.2d 233, 235 (1991); *Whitfield v. Whitfield,* 222 N.J.Super. 36, 535 A.2d 986, 987 (App.Div.1987), *disagreed with on other grounds, Moore v. Moore,* 114 N.J. 147, 553 A.2d 20 (1989); *Walentowski v. Walentowski,* 100 N.M. 484, 672 P.2d 657, 660 (1983); *Kowalewski v. Kowalewski,* 99 A.D.2d 928, 473 N.Y.S.2d 52, 53 (1984); *Delorey v. Delorey,* 357 N.W.2d 488, 491 (N.D.1984); *Berrington v. Berrington,* 409 Pa.Super. 355, 598 A.2d 31, 34 (1991); *Ball v. Ball,* 445 S.E.2d 449, 450 (S.C. 1994); *Towner v. Towner,* 858 S.W.2d 888, 891 (Tenn.1993) (dicta); *Cearley v. Cearley,* 544 S.W.2d 661, 666 (Tex.1976); *Greene v. Greene,* 751 P.2d 827, 831 (Utah Ct.App.1988) (dicta); *Cook v. Cook,* 18 Va.App. 726, 446 S.E.2d 894, 895 (1994); *Butcher v. Butcher,* 178 W.Va. 33, 357 S.E.2d 226, 234 n. 15 (1987); *Parker v. Parker,* 750 P.2d 1313, 1313 (Wyo.1988).

11. *Burns v. Burns,* 312 Ark. 61, 847 S.W.2d 23, 26 (1993); *Kirkman v. Kirkman,* 555 N.E.2d 1293, 1294 (Ind.1990); *George v. George,* 115 N.C.App. 387, 444 S.E.2d 449, 450 (1994); *King v. King,* 78 Ohio App.3d 599, 606–07, 605 N.E.2d 970, 974 (1992).

12. *Coen v. Coen,* 603 A.2d 1125, 1126 (R.I.1992).

13. *Batson v. Batson,* 769 S.W.2d at 857; *Matheny v. Matheny,* Obion Eq. No. 1, slip op. at 8, 15 T.A.M. 16–9, 4 T.F.L.L. 7–15, 1990 WL 20116 (Tenn.Ct.App. Mar. 7, 1990); *Defenderfer v. Defenderfer,* C.A. No. 1165, slip op. at 5–6, 13 T.A.M. 40–6, 2 T.F.L.L. 12–9, 1988 WL 87677 (Tenn.Ct.App. Aug. 26, 1988).

14. *See* Tenn.Code Ann. § 36–4–121(b)(1)(A) ("during the course of the marriage up to the date of the final divorce hearing") and Tenn. Code Ann. § 36–4–121(b)(1)(B) ("during the period of the marriage"). Accordingly, pension rights accruing before the marriage are not marital property. *Forthman v. Forthman,* C.A. No. 55, slip op. at 2, 15 T.A.M. 45–20, 5 T.F.L.L. 2–8, 1990 WL 145430 (Tenn.Ct.App. Oct. 5, 1990); *Dupuis v. Dupuis,* App. No. 87–187–II, slip op. at 7, 13 T.A.M. 35–19, 2 T.F.L.L. 11–10, 1988 WL 74620 (Tenn.Ct.App. July 20, 1988) *perm. app. denied* (Tenn. Oct. 31, 1988); *Thomas v. Thomas, supra,* slip op. at 3. Similarly, pension rights accruing after the marriage are not marital property. *Cohen v. Cohen, supra,* slip op. at 4 (dicta); *Barker v. Barker,* 02–A–01–9112–CV–00299, slip op. at 3, 17 T.A.M. 38–7, 7 T.F.L.L. 1–17, 1992 WL 210465 (Tenn.Ct.App. Sept. 1, 1992); *Brown v. Brown,* App. No. 88–256–II, slip op. at 3, 14 T.A.M. 8–20, 3 T.F.L.L. 5–11, 1989 WL 1219 (Tenn.Ct.App. Jan. 13, 1989).

the pension as marital property.[15] Fourth, the pension rights must be valued as of a date as near as possible to the final divorce hearing date.[16]

Like the courts in other states, this court has recognized two techniques for valuing and distributing pensions. The first technique is the present value method; the second is the retained jurisdiction or deferred distribution method. *Mahaffy v. Mahaffy*, Shelby Cir. No. 39, slip op. at 5, 14 T.A.M. 49–25, 4 T.F.L.L. 3–18, 1989 WL 128923 (Tenn.Ct.App. Oct. 30, 1989); *Brown v. Brown, supra,* slip op. at 5; *Bartley v. Bartley, supra,* slip op. at 8–9; *see also* Blumberg, *supra,* 2 Valuation & Distribution of Marital Prop. § 23.02[4].

■ The present value method requires the court to place a present cash value on the pension interest acquired during the marriage. Barth H. Goldberg, *Valuation of Divorce Assets* § 9.5 (1984). Once the court computes the present cash value of the pension rights, it awards the pension to the employee spouse and then awards the other spouse marital property of equal value. If the marital estate is insufficient to make an offsetting award, then the court may make an award payable in installments.

■ The retained jurisdiction method, as its name indicates, requires the court to retain jurisdiction over the case and to defer dividing the pension interest until the pension vests or matures. In some jurisdictions, the courts using this method determine the nonemployee spouse's share in advance and then enter an order identifying the portion that the spouse will receive if and when the employee spouse begins drawing his or her retirement benefits. The nonemployee spouse's share is commonly expressed as a fraction or a percent of the employee spouse's monthly pension benefit.[17]

In a case where the parties had been married for fifteen of the husband's twenty years of Navy service, this court determined that 75% of the husband's vested pension was marital property and that the wife was entitled to 37.5% of the husband's monthly pension payments. *Wheeler v. Wheeler,* C.A. No. 1010, slip op. at 2, 10 T.A.M. 44–11 (Tenn.Ct.App. Oct. 2, 1985). This court made a similar calculation in a case involving nonvested pension rights where the husband had accrued fifteen years of service toward a military pension that vested after twenty years. Since the husband had been married for thirteen of the fifteen years, this court determined that 65% of the husband's pension rights were marital property and that the wife was entitled to 32.5% of the husband's monthly pension payments. *Patric v. Patric, supra,* slip op. at 11.[18]

The deferred distribution method has distinct advantages with regard to nonvested pension interests, especially when the risk of forfeiture is great. *In re Marriage of Nelson,* 746 P.2d 1346, 1349 (Colo.1987). It equalizes the risk of forfeiture between the parties. *In re Marriage of Brown,* 544 P.2d at 567; *In re Marriage of Gallo,* 752 P.2d at 55; *Berrington v. Berrington,* 598 A.2d at 36. It avoids the difficulties associated with attempting to place a present cash value on a nonvested retirement interest. *In re Marriage of Mantei,* 222 Ill.App.3d 933, 164 Ill. Dec. 870, 873, 583 N.E.2d 1192, 1195 (1991); *Ball v. Ball,* 445 S.E.2d at 451; Blumberg, *supra,* 2 Valuation & Distribution of Marital

---

**15.** *Cooper v. Cooper,* App. No. 85–305–II, slip op. at 5, 11 T.A.M. 49–9, 1 T.F.L.L. 2–6, 1986 WL 10691 (Tenn.Ct.App. Oct. 1, 1986).

**16.** Tenn.Code Ann. § 36–4–121(b)(1)(A).

**17.** The numerator of the fraction is the number of years or months of the marriage during which the pension interests accrued, and the denominator is the total number of years or months during which the pension benefits were accumulated before being paid. *In re Marriage of Hunt,* 78 Ill.App.3d 653, 34 Ill.Dec. 55, 63, 397 N.E.2d 511, 519 (1979); *Janssen v. Janssen,* 331 N.W.2d at 756.

**18.** For the purpose of the calculation, the court assumed that the husband would retire after twenty years of service when his pension vested. Thirteen years is 65% of the twenty years required for vesting.

Prop. § 23.02[4][c]. It also avoids the problems caused when the marital estate does not contain sufficient property to make an offsetting award whose value is equal to that of the pension. *Bartley v. Bartley, supra,* slip op. at 9; *see also Tarr v. Tarr,* 570 A.2d 826, 827–28 (Me.1990); *Zander v. Zander,* 470 N.W.2d 603, 606 (N.D.1991).

■ The choice of valuation method is a discretionary one, *In re Marriage of Mantei,* 164 Ill.Dec. at 873, 583 N.E.2d at 1195, that depends on the facts of the case. *Zander v. Zander,* 470 N.W.2d at 606. However, the deferred distribution method is particularly suitable for nonvested military pensions. William M. Troyan, *Procedures for Evaluating Retirement Entitlements Under Non–ERISA Retirement Systems for Marriage Dissolution Actions,* 3 Valuation & Distribution of Marital Prop. (MB) § 46.32 (1988) ("Troyan"). This court has held specifically that the present value method is inappropriate when pension rights are nonvested, *Sanders v. Sanders,* App. No. 01–A–01–9203–CH–00098, slip op. at 6, 17 T.A.M. 36–22, 6 T.F.L.L. 12–16, 1992 WL 194578 (Tenn.Ct. App. Aug. 14, 1992), *perm. app. denied* (Tenn. Nov. 23, 1992), and has used the deferred distribution method to value and distribute a nonvested pension. *Patric v. Patric, supra,* slip op. at 12.

### B.

Sergeant Kendrick's Air Force retirement plan is noncontributory and is funded completely with annual appropriations by Congress. *McCarty v. McCarty,* 453 U.S. at 214, 101 S.Ct. at 2732. Except for those who qualify for early retirement pursuant to a program that expires in 1999,[19] enlisted personnel must complete at least twenty years of active service before they may request to be retired and made members of the Air Force Reserve. 10 U.S.C. § 8914 (1988). Personnel who have completed thirty years of service may be fully retired on request. 10 U.S.C. § 8917 (1988). Thus, except for the temporary early retirement program, an enlisted person's right to receive retirement benefits vests after twenty years of service. *See George v. George,* 444 S.E.2d at 450 (analogous provision for enlisted Army personnel). Persons who leave the Air Force before completing twenty years of service lose all their pension rights. *Troyan, supra,* 3 Valuation & Distribution of Marital Prop. § 46.32.

The Air Force retirement plan is also a defined benefit plan because its benefits are based on a member's length of service and salary, not on a member's contributions to the plan. *Blumberg, supra,* 2 Valuation & Distribution of Marital Prop. § 23.02[1][b] (elements of defined benefit plans). The retirement benefits for Air Force enlisted personnel are computed by multiplying a person's retired pay base[20] by the retired pay multiplier applicable to the member's years of creditable service. *See* Formula B, 10 U.S.C. § 8991(a)(1) (1988).[21]

■ Military retirement benefits terminate with the retired military member's death and do not pass to the member's heirs. *McCarty v. McCarty,* 453 U.S. at 215, 101 S.Ct. at 2732. However, members of the armed services have several means to set aside a portion of their retirement for their surviving spouse or child. The Retired Ser-

---

19. 10 U.S.C. § 1293 note ("Temporary Early Retirement Authority") (Supp. V 1993) empowers the Secretary of the Air Force to permit enlisted personnel with at least fifteen years of active duty service to retire during the active force drawdown period under the provisions of 10 U.S.C. § 8914.

20. 10 U.S.C. § 1406(e)(1) (1988) provides that the retired pay base for persons who joined the Air Force before September 8, 1980 shall be the "[m]onthly basic pay to which [the] member was entitled on [the] day before he [or she] retired."

21. For persons who became members of the uniformed service before July 31, 1986, the retired pay multiplier for regular-service, non-disability retirement is arrived at by multiplying 2.5% by the member's years of creditable service. 10 U.S.C. § 1409(b) (1988). A member's creditable service is computed by adding all the member's active service in the armed services. 10 U.S.C. § 8925(a) (Supp. V 1993).

viceman's Retirement Protection Plan permits members of the armed services to use a portion of their retirement to purchase an annuity. 10 U.S.C. §§ 1431–1446 (1988 & Supp. V 1993) (current version of the Retired Serviceman's Family Protection Plan). The Survivor Benefit Plan similarly permits members of the armed services to purchase an annuity and also requires contributions from the federal government. Participation in the Survivor Benefit Plan is automatic unless a member chooses to opt out. 10 U.S.C. §§ 1447–1455 (1988 & Supp. V 1993) (current version of the Survivor Benefit Plan).

## C.

█ This case is particularly amenable to the use of the deferred distribution method for valuing and distributing Sergeant Kendrick's pension rights. His pension is non-vested,[22] and thus placing a present value on it is not practical. Even if a present value could be calculated, the Kendricks' marital estate is not large enough to make an offsetting award of other marital property to Ms. Kendrick. As a matter of fairness, Ms. Kendrick should share the risk that Sergeant Kendrick might forfeit his pension if he leaves the Air Force before his pension vests.

█ Courts dividing a marital estate are not required to apply the statutory factors mechanically. *Batson v. Batson,* 769 S.W.2d at 859. The parties are entitled to an equitable division of their marital property, not an equal one, *Thompson v. Thompson,* 797 S.W.2d 599, 604 (Tenn.Ct.App.1990), or one that is mathematically precise. All that Tenn.Code Ann. § 36–4–121 requires is essential fairness in light of the facts of the case.

Essential fairness is promoted by using valuation and distribution procedures that are straightforward and easily applied. Ms. Kendrick's interest in Sergeant Kendrick's pension rights must be limited to the rights Sergeant Kendrick earned during their marriage. Her interest should also be valued as near to the date of the final divorce hearing as possible and should be based on Sergeant Kendrick's earliest possible vesting date and on his salary at the time of the divorce.

Accordingly, we vacate the portion of the trial court's order awarding Ms. Kendrick 15% of Sergeant Kendrick's pension "when paid periodically or in a lump sum" and remand the case to determine Ms. Kendrick's share of Sergeant Kendrick's retirement pay. On remand, the trial court should first calculate the portion of Sergeant Kendrick's pension that is marital property.[23] Next, the trial court should calculate Sergeant Kendrick's retirement pay if he retired at his present rank at his earliest possible vesting date. Then, the trial court should determine the portion of the marital interest in the pension Ms. Kendrick should receive.[24] Finally, the trial court should enter an order setting out Ms. Kendrick's share of Sergeant Kendrick's retirement pay.[25] The order should also provide that Ms. Kendrick is entitled to receive these payments directly from the Air Force in accordance with 10

22. In accordance with 10 U.S.C. § 8914, Sergeant Kendrick's pension will vest in the year 2000 when he accumulates 20 years of active service. However, his pension could vest earlier if he is entitled to early retirement after fifteen years of service in accordance with 10 U.S.C. § 1293 note.

23. If Sergeant Kendrick's pension vests after 20 years, then 52.5% of it would be marital property since the 10.5-year duration of the marriage is 52.5% of the 20 needed to earn a vested interest. If Sergeant Kendrick's pension can vest after 15 years, then 70% of the pension would be marital property since 10.5 years is 70% of 15 years.

24. An equal division is equitable unless the evidence requires otherwise. *Kelly v. Kelly,* 679 S.W.2d 458, 462 (Tenn.Ct.App.1984). Thus, if Sergeant Kendrick's pension vests in 20 years, Ms. Kendrick would be entitled to 26.25% of its value. If the pension vests after 15 years, then Ms. Kendrick would be entitled to 35% of the value of the pension.

25. Ms. Kendrick's share may be expressed in a fixed dollar amount or may be stated later as a percentage of Sergeant Kendrick's actual retirement pay if and when he begins drawing it.

U.S.C. § 1408(d)(1) and 32 C.F.R. § 63.6 (1993) if and when Sergeant Kendrick begins receiving his retirement pay.

## VI.

We vacate the portion of the divorce decree awarding Ms. Kendrick 15% of Sergeant Kendrick's pension and remand the case for further proceedings consistent with this opinion. We also tax the costs of this appeal to Mitchell Gene Kendrick and his surety for which execution, if necessary, may issue.

TODD, P.J., and CANTRELL, J., concur.