FILED
07/14/2017
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 17, 2017 Session

## KAREN H. FOSTER v. DOUGLAS S. FOSTER

**Appeal from the Chancery Court for Montgomery County**
**No. MCCHCVDI06-86     Laurence M. McMillan, Jr., Chancellor**

———————————————————

**No. M2016-01749-COA-R3-CV**

———————————————————

This post-divorce case involves the interpretation of a paragraph in a marital dissolution agreement regarding the allocation of a portion of Husband's military retirement benefits to Wife. Both parties petitioned the trial court to interpret the terms of the agreement. The trial court held that the agreement awarded Wife 33% of Husband's actual disposable military retirement pay at the rank of Captain (his rank at the time of the divorce). On appeal, Husband contends that the award was intended to be alimony in solido calculable at the time of the divorce based on the value of his accrued benefits at that time. He also contends that Wife should be bound by her acknowledgment in pre-litigation discussions of $465.86 per month as the correct amount of the award. Having considered the issues advanced on appeal, we agree with the trial court's interpretation of the marital dissolution agreement and affirm its judgment in all respects. Additionally, we hold that Wife is entitled to an award of reasonable attorney's fees incurred on appeal pursuant to the terms of the marital dissolution agreement and remand this case to the trial court for a determination of the appropriate amount of those fees.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and BRANDON O. GIBSON, J., joined.

William L. Aldred, Jr., Clarksville, Tennessee, for the appellant, Douglas S. Foster.

Mark A. Rassas and Julia P. North, Clarksville, Tennessee, for the appellee, Karen H. Foster.

# OPINION

## BACKGROUND AND PROCEDURAL HISTORY

Douglas S. Foster ("Husband") and Karen H. Brooks ("Wife") divorced in 2006 after 13 years of marriage. At the time of the divorce, Husband had served 14 years in the United States Army and held the rank of Captain. The final decree of divorce incorporated a marital dissolution agreement negotiated and entered into by the parties. Paragraph 6 of the marital dissolution agreement contained the following language concerning the division of Husband's disposable retirement pay:

> The parties mutually acknowledge that they have been married during thirteen (13) years (156 months) of Husband's active military service and that he now holds the rank of Captain (03). In the event the Husband should retire from the military at a higher rank and thereby becomes eligible for retired military pay, the parties agree that the Wife shall have 33% of the Husband's disposable retirement pay at the grade of Captain and that said amount shall be payable for a period of thirteen (13) years (156 months) regardless of whether the Husband attains a higher rank than Captain. It is the express intent of the parties that the Wife shall only be entitled to 33% of Husband's disposable military retirement pay for thirteen years (156 months) at the rank of Captain and Wife forever releases Husband of any further payments. In the event that the Husband draws disability payments that reduce his retirement benefits, this will in no way reduce Wife's entitlement as stated above.

In May 2015, Husband retired from the military at the rank of Major after 23 years of service. Shortly thereafter, Wife contacted the Defense Finance and Accounting Service ("DFAS") to apply for direct payment of her portion of Husband's disposable retirement pay. DFAS responded with a letter explaining that it was unable to approve Wife's request because the divorce decree submitted with her application did not provide the information needed to calculate the amount of the monthly payments. The letter directed Wife to obtain a clarifying court order that awarded her a fixed dollar amount or a percentage of Husband's actual disposable retirement pay.

In June 2015, Wife contacted William H. Poland, the attorney who had represented Husband in the parties' divorce. In the months that followed, Mr. Poland acted as an intermediary between Husband and Wife as they discussed filing a joint petition to amend the marital dissolution agreement. Wife was not represented by an attorney during the discussions.[1] Photocopies of emails between Husband, Wife, and Mr.

---

[1] On August 3, 2015, Mr. Poland sent Wife an email explaining that he could not ethically represent her in the modification discussions. Mr. Poland further stated that, although Wife was free to retain her own

Poland are included in the record and shed light on the nature of their discussions. The emails reflect that, after his initial meeting with Wife, Mr. Poland began working on a joint petition to modify the marital dissolution agreement by deleting Paragraph 6 and replacing it with language that expressed Wife's award as a fixed dollar amount. On August 6, 2015, Mr. Poland sent Wife a draft of the proposed modification that provided in part:

> Husband agrees to provide Wife a monthly payment from his entitlement in the amount of $465.86 beginning at the time Husband's retirement payments began (1 June 2015) for a period of 156 months, ending with the final payment on 1 May 2028.

Several days later, Mr. Poland forwarded to Wife an email from Husband showing that the $465.86 amount was calculated based on Husband's pay at the time of the divorce in 2006. Wife responded, "The attachment looks accurate to me and is acceptable. What steps do we need to take now?" On October 19, 2015, Mr. Poland sent Wife his draft of a "Joint Petition to Amend Divorce Decree and Marital Settlement Agreement." In part, the petition stated that the marital dissolution agreement should be amended to provide, "Wife shall have 33% of Husband's disposable retirement pay at the grade of Captain O-3E, which has been calculated and agreed upon by the parties to be $465.86." Wife replied to Mr. Poland by email stating, "The amendment looks fine to me," and the two began making arrangements for Wife to sign the necessary documents. On October 28, 2015, however, Mr. Poland informed Wife that Husband wanted to make more changes to the marital dissolution agreement. Although Mr. Poland sent his draft of a "Joint Petition to Clarify Divorce Decree and Marital Dissolution Agreement" to Wife on November 29, 2015, the discussions broke down and the parties never signed or submitted a joint petition.

In January 2016, Wife filed a petition to hold Husband in civil contempt for his failure to make payment towards her portion of his retirement pay as required by the marital dissolution agreement. Wife asserted in the petition that the award amount calculated by Husband was not accurate and that Husband had not made any payments to her since his retirement. In addition to requesting that Husband be held in civil contempt, she asked the court to enter a modified order acceptable to DFAS and award her all costs and reasonable attorney's fees incurred in prosecuting the petition. In February 2016, Husband filed an answer denying the material allegations of Wife's contempt petition. Husband also filed a motion for a declaratory judgment affirming $465.86 per month as the correct amount of the award.

---

attorney, he thought the matter could be resolved without her doing so. Wife did not retain her own attorney until December 2015.

The trial court consolidated the matters, and the parties submitted briefs outlining their arguments. In her pre-trial brief, Wife argued that the trial court should calculate the award amount using the retained jurisdiction method. That is, her portion of Husband's benefits should be calculated as 33% of the actual retirement benefits Husband would have received if he had retired at the rank of Captain. Citing a 2015 military pay chart attached to her brief, Wife asserted that Captains with 23 years of service were eligible to receive $3,844 per month in disposable retirement pay at the time of Husband's retirement. Wife argued that she should receive 33% of that amount, or $1,281.33 per month. In response, Husband argued that increases in military retirement pay that occurred after the divorce were not marital property and that an award amount should therefore be calculated as of the date of the divorce regardless of whether he was eligible for retirement pay at that time. Citing military pay charts from 2003 to 2006, Husband asserted that a Captain with 14 years of service would have accrued $1,411.70 per month in retirement pay at the time of the divorce. He argued that Wife should receive 33% of that amount, or $465.86 per month. Alternatively, Husband argued that Wife should be bound by the emails in which she acknowledged that $465.86 per month was the correct amount of the award.

Following a hearing, the trial court entered a memorandum opinion and final order in July 2016. The trial court found that, at the time of the divorce, Husband's right to receive disposable retirement pay was unvested and subject to forfeiture if he failed to reach the required term of service. As such, the trial court concluded that it should use the retained jurisdiction method to calculate Wife's award as 33% of Husband's actual disposable retirement pay at the rank of Captain. Citing the 2015 military pay chart attached to Wife's pre-trial brief, the trial court found that Captains with 23 years of service were eligible to receive $3,844 per month in disposable retirement pay at the time of Husband's retirement. The trial court held that Wife was entitled to receive 33% of that amount, or $1,281.33 per month, for a period of 156 months beginning in May 2015. The trial court also awarded Wife a judgment against Husband in the amount of $12,697.46 for overdue payments. Nevertheless, the trial court denied Wife's contempt petition and request for attorney's fees. Thereafter, Husband filed a timely notice of appeal to this Court.

**ISSUES**

Husband raises the following issues on appeal, as we have restated them from his appellate brief:

1. Whether the trial court erred in calculating Wife's portion of Husband's military retirement benefits based on the amount of income payable to retired service members at the rank of Captain at the time of Husband's retirement rather than at the time of the parties' divorce.

2. Whether the trial court erred in holding that Wife was not bound to her acknowledgment that $465.86 per month was the correct amount of her portion of Husband's military retirement benefits.

Wife raises the following additional issue on appeal:

1. Whether Wife is entitled to an award of attorney's fees incurred on appeal.

## STANDARD OF REVIEW

The issues presented in this appeal relate to the interpretation of a marital dissolution agreement. Marital dissolution agreements are contracts between parties contemplating a divorce and are generally subject to the rules governing construction of contracts. *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006). "Because the interpretation of a contract is a matter of law, our review is de novo on the record with no presumption of correctness in the trial court's conclusions of law." *Id.*

## DISCUSSION

Divorcing parties frequently use marital dissolution agreements to settle property, support, and custody issues. *See Long v. McAllister-Long*, 221 S.W.3d 1, 8 (Tenn. Ct. App. 2006). Such agreements are contractual in nature in the sense that they are the product of negotiation and agreement by the parties. *Id.* To the extent that they retain their contractual nature, the obligations in a marital dissolution agreement are construed and enforced like other contracts.[2] *Id.* at 9. The primary goal in interpreting a marital dissolution agreement, as with any other contract, is to ascertain and give effect to the intent of the parties at the time the agreement was executed. *Buettner v. Buettner*, 183 S.W.3d 354, 358-59 (Tenn. Ct. App. 2005). In ascertaining the intent of the parties, the courts must begin with the language of the agreement itself. *Long*, 221 S.W.3d at 9. If the language used in the agreement is clear and unambiguous, it must be interpreted as written according to its plain terms. *Honeycutt v. Honeycutt*, 152 S.W.3d 556, 561-62 (Tenn. Ct. App. 2003). The provisions of the agreement must be construed together, and the language in each provision must be given its natural and ordinary meaning. *Long*, 221 S.W.3d at 9. The court must avoid rewriting the agreement under the guise of construing it because the parties are not entitled to a marital dissolution agreement that is different from the one they negotiated. *Id.*

---

[2] After a divorce decree becomes final, those portions of the marital dissolution agreement related to child support and statutorily modifiable spousal support lose their contractual nature and remain modifiable by the courts when justified by changed circumstances. *See Penland v. Penland*, 521 S.W.2d 222, 224 (Tenn. 1975).

Paragraph 6 of the parties' marital dissolution agreement provides for the division of Husband's military retirement benefits as marital property pursuant to Tennessee Code Annotated section 36-4-121. An employee spouse's right to receive retirement benefits, both military and non-military, may be "vested" or "unvested" at the time of the employee's divorce. *See Cohen v. Cohen*, 937 S.W.2d 823, 826 (Tenn. 1996). The employee has a vested right to retirement benefits when he or she has completed the requisite term of employment necessary to become entitled to receive retirement benefits when he or she elects to retire. *Id*. That vested right matures when the employee has an unconditional right to immediate payment because he or she has reached retirement age and elected to retire. *Id*. Depending on the terms of the employer's retirement program, the employee's right may vest after a term of service even though it does not mature until the employee reaches retirement age and elects to retire. *Id*. The employee's right to retirement benefits is unvested when he or she has not yet completed the requisite term of service. *Id*. In Tennessee, both vested and unvested retirement rights that accrue during a marriage are considered marital property subject to division. *See* Tenn. Code Ann. § 36-4-121(b)(1)(B)(ii) (providing that marital property includes the value of vested retirement benefits accrued as a result of employment during the marriage); *Cohen*, 937 S.W.2d at 830 (holding that marital property includes retirement benefits, both vested and unvested, that accrue during the marriage).

Tennessee courts use one of two methods in valuing and distributing retirement benefits: the present value method or the retained jurisdiction method. *Cohen*, 937 S.W.2d at 831 (citing *Kendrick v. Kendrick*, 902 S.W.2d 918, 927 (Tenn. Ct. App. 1994)). The present value method requires the court to place a present cash value on the retirement benefit as of the date of the final decree of divorce. *Id*. The present cash value method is preferable when the amount of the employee spouse's retirement benefits can be ascertained accurately at the time of the divorce. *Id*. The retained jurisdiction method, as its name suggests, requires the court to retain jurisdiction over the matter and defer distribution of the retirement benefits until they become payable. *Id*. Rather than determine the value of the retirement benefits at the time of the divorce, the trial court may express the marital property interests of each spouse as a fraction or percentage of the employee spouse's future monthly benefit. *Id*.

Although the choice of a valuation method is a discretionary decision that depends on the facts and circumstances of the case, the retained jurisdiction method is appropriate when the employee's right to the retirement benefits is unvested at the time of the divorce. *Kendrick*, 902 S.W.2d at 928. That is the case because the value of an unvested retirement right may never be realized. Retaining jurisdiction over the matter and deferring distribution of retirement benefits until they become payable allows the trial court to equalize the risk of forfeiture between the parties and avoid requiring present payment for a benefit that may potentially never be obtained. *Cohen*, 937 S.W.2d at 831; *Kendrick,* 902 S.W.2d at 927.

On appeal, Husband contends that the trial court erred in using the retained jurisdiction method to calculate the amount of Wife's award. He submits that the marital dissolution agreement's award of 33% of his retirement benefits was an award of alimony in solido calculable as $465.86 per month at the time that the divorce decree was entered. *See generally* Tenn. Code Ann. § 36-5-121(h)(1) ("Alimony in solido . . . is a form of long term support, the total amount of which is calculable on the date the decree is entered . . . the sum of the alimony to be paid is ascertainable when awarded."). Thus, he essentially argues that Wife should receive 33% of the disposable retirement pay that he had accrued as a Captain with 14 years of service in 2006 rather than 33% of the disposable retirement pay a Captain retiring with 23 years of service in 2015 would receive.

This Court recently rejected a similar argument in *Pinkava v. Kovacs-Pinkava*, No. M2013-02375-COA-R3-CV, 2014 WL 6735192, at *2 (Tenn. Ct. App. Nov. 26, 2014). In that case, the parties divorced in 2000 after 13 years of marriage. *Id*. at *1. The husband served in the United States Air Force during the marriage, and the parties' marital dissolution agreement provided, "The parties agree that [Wife] shall receive twenty-five percent (25%) of [Husband's] military retirement based on [Husband's] current rank as a Captain." *Id*. In 2011, the wife contacted DFAS to request payment of her interest in the husband's retirement benefits, and DFAS responded with a letter directing her to obtain a clarifying order that awarded a fixed dollar amount or percentage of the actual disposable retirement pay. *Id*. Thereafter, the wife filed a petition to modify or clarify the marital dissolution agreement to comply with the DFAS request. *Id*. Following a hearing, the trial court entered an order amending the marital dissolution agreement to state, "[Wife] is awarded 25%, plus all cost of living increases, of [Husband's] military retired pay at the date of his retirement and based on the rank of [Captain]." *Id*. at *2. The husband appealed, arguing that the award of 25% of his retirement benefits was alimony in solido ascertainable at the time of the divorce based on his monthly income at that time. *Id*. This Court rejected his argument and affirmed the trial court's interpretation of the marital dissolution agreement. *Id*. at *3. We held, "Wife will not receive the benefit of Husband's advancements in rank following the divorce; however, she will receive twenty-five percent of the value of a captain's retirement." *Id*.

Although Husband does not cite *Pinkava* in his appellate brief, he asserts that "every case relied upon [by Wife] will have a drastically different fact pattern[] than is present in the case at bar." As best we can tell, that assertion is based on the fact that cases cited by Wife (including *Pinkava*) involve awards of retirement benefits to be paid in monthly installments for an indefinite period of time, unlike the award in this case that was to be paid for a period of 13 years. Husband submits that the awards in those cases were, therefore, not alimony in solido calculable at the time they were awarded. Husband's argument is flawed, however, because the facts of this case clearly demonstrate that, while Wife's award was to be paid for a definite period, the total

amount of the award was not calculable when the parties divorced as Husband's right to receive the benefits had not vested at that time. At the time of the parties' divorce, Husband had completed 14 years of Army service. Enlisted members of the Army must complete at least 20 years of service before they may request to be retired with benefits. *See* 10 U.S.C. § 3914. As such, at the time of the divorce, it was not yet clear that Husband would serve the number of years required to achieve retirement and receive retirement benefits. Because Husband could have forfeited his benefits prior to serving the requisite number of years, his interest in the retirement benefits could have potentially had zero actual value at the time of the divorce. As such, the trial court's use of the retained jurisdiction method to value the benefits was appropriate in this case.

Moreover, the language used in Paragraph 6 of the parties' marital dissolution agreement is clear and unambiguous. In pertinent part, it provides, "Wife shall have 33% of the Husband's disposable retirement pay at the grade of Captain . . . regardless of whether the Husband attains a higher rank than Captain." Thus, the only language that qualifies Wife's right to receive 33% of Husband's actual disposable retirement pay provides that her award should be based on Husband's *rank* at the time of the divorce. There is nothing in the agreement to suggest that the amount of Wife's award should be based in any way on Husband's *pay* at the time of the divorce. In accordance with the agreement, the trial court held that Wife was entitled to 33% of the disposable retirement pay Husband would have received if he retired at the rank of Captain. The trial court's ruling does not provide Wife with any benefit from Husband's advancements in rank following the divorce. While Husband argues that Wife should not benefit from increases in retirement pay that occurred after the divorce, there is no basis in the agreement for excluding them. As we noted previously, we must be careful not to rewrite a marital dissolution agreement under the guise of construing it because the parties are not entitled to an agreement that is different from the one they negotiated. *Long*, 221 S.W.3d at 9. In any event, logic dictates that such increases in retirement pay should be included in Wife's award. Wife, like Husband, did not have any means of accessing the funds until Husband retired in 2015. Denying Wife the benefit of passive cost-of-living increases in retirement pay would effectively deny her the full amount of the award to which she is entitled. As such, we conclude that the trial court correctly calculated the monthly amount of Wife's award to be $1,281.33.

Husband also argues that the trial court erred in holding that Wife was not bound by the emails in which she acknowledged $465.86 as the correct monthly amount of her award. Specifically, Husband contends that Wife's statements in the emails are evidence of the parties' original intent when they entered the marital dissolution agreement. As we stated previously, however, the language in the marital dissolution agreement is clear and unambiguous. When the language used in an agreement is clear and unambiguous, it must be interpreted as written according to its plain terms. *Honeycutt*, 152 S.W.3d at 561-62. As such, Husband's argument on this issue is without merit.

Finally, Wife contends that she is entitled to an award of attorney's fees incurred on appeal. Tennessee follows the "American rule" with regard to attorney's fees. *Cracker Barrel Old Country Store, Inc. v. Emerson*, 284 S.W.3d 303, 308 (Tenn. 2009). Under the American rule, litigants are responsible for their own attorney's fees unless a contractual or statutory provision creates a right to recover attorney's fees or some other recognized exception to the American rule applies. *Id*. at 308-09. The Tennessee Supreme Court recently held that parties are contractually entitled to recover their reasonable attorney's fees at both the trial and appellate court levels when they have a valid and enforceable marital dissolution agreement that requires an award of attorney's fees to a prevailing or successful party. *Eberbach v. Eberbach*, No. M2014-01811-SC-R11-CV, --- S.W.3d ----, 2017 WL 2255582, at *6-7 (Tenn. May 23, 2017). The courts do not have the discretion to set aside the parties' agreement and replace it with their own judgment. *Id*. at *6. Thus, in such cases, the terms of the parties' agreement govern the award of fees, and the court must enforce the parties' terms to the extent the agreement demands. *Id*. at *7.

In this case, attorney's fees are addressed in Paragraph 10 of the parties' marital dissolution agreement, which contains the following language:

> In the event that it becomes necessary for either party to bring a court action to assist in the enforcement of this Agreement, and the Court finds that one of the parties has violated the terms of this Agreement, the parties agree that any order to enforce compliance with the terms of this Agreement shall include the expenses of litigation including attorney's fees assessed against the violating party.

In light of the above language, we conclude that we have no discretion to deny Wife an award of attorney's fees incurred on appeal.[3] The applicability of that provision turns on whether it was necessary for Wife to bring a court action to assist in the enforcement of the marital dissolution agreement and whether we find that Husband violated the terms of the marital dissolution agreement. As we explained above, the agreement provides for Wife to receive 33% of Husband's disposable retirement pay based on his *rank* at the time of the divorce. Before Wife instituted these proceedings, Husband insisted that Wife should receive an amount based on his *pay* at the time of the divorce. That amount was lower than the amount to which Wife was entitled under the agreement. As such, Husband's actions violated the agreement, and it was necessary for Wife to enforce the agreement by instituting these proceedings. Although the trial court denied Wife's motion to hold Husband in contempt, she ultimately achieved the primary

---

[3] In her appellate brief, Wife only raises as an issue whether she is entitled to attorney's fees incurred on appeal; she does not challenge the trial court's denial of her request for attorney's fees incurred at trial. This Court may treat issues that are not raised on appeal as being waived. *See* Tenn. R. App. P. 13(b). As such, we conclude that Wife has waived any right to an award of attorney's fees incurred in the trial court and limit our discussion to whether she is entitled to attorney's fees incurred on appeal.

benefit that she sought in these proceedings because the trial court's judgment, which we have affirmed, ordered Husband to act in compliance with the agreement by increasing the amount of his payments to Wife and reimbursing her for the deficiencies in his earlier payments.  Moreover, because Husband initiated this appeal, Wife was forced to incur additional attorney's fees to defend the trial court's judgment and ensure the agreement's continued enforcement.  As such, we hold that Wife is entitled to an award of attorney's fees incurred on appeal and remand this case for a determination of the appropriate amount of those fees.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.  This case is remanded to the trial court for a determination of the appropriate amount of Wife's reasonable attorney's fees incurred on appeal.  Costs of this appeal are taxed to the appellant, Douglas S. Foster, and his surety, for which execution may issue.


_____
ARNOLD B. GOLDIN, JUDGE