IN THE COURT OF APPEALS OF TENNESSEE

| PEGGY E. GILLIAM, | ) C/A NO. 01A01-9609-CV-00414 |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| | ) |
| | ) APPEAL AS OF RIGHT FROM THE |
| v. | ) DAVIDSON COUNTY FOURTH CIRCUIT COURT |
| | ) No. 95D-788 |
| | ) |
| | ) |
| | ) |
| JAMES H. GILLIAM, | ) |
| | ) HONORABLE MURIEL ROBINSON, |
| Defendant-Appellant.) | JUDGE |

FILED

April 18, 1997

Cecil W. Crowson
Appellate Court Clerk

For Appellant:

JEFFREY S. PULLEY
Nashville, Tennessee

For Appellee:

PEGGY D. MATHES
Nashville, Tennessee


O P I N I O N


VACATED IN PART
AFFIRMED IN PART
REMANDED                                            Susano, J.

This is a divorce case. The trial court's judgment of December 8, 1995, dissolved a childless marriage of approximately 15 and a half years. The court granted Peggy E. Gilliam (Wife), age 46, a divorce from James H. Gilliam (Husband), age 50, on the ground of inappropriate marital conduct; divided the parties' property, awarded Wife periodic alimony *in futuro* of $400 per month, increasing to $600 per month after May, 1997; awarded Wife a portion of Husband's non-vested pension benefits; ordered Husband to make the parties' monthly mortgage payment through May, 1997; directed Husband to pay for Wife's health insurance for 36 months through his employer's group health plan pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA health insurance coverage); and granted other relief not germane to this appeal. Husband appealed, raising the following issues[1] for our review:

> 1. Did the trial court abuse its discretion when it awarded Wife periodic alimony until her death or remarriage?
>
> 2. Did the trial court abuse its discretion in ordering Husband to make the parties' mortgage payment through May, 1997?
>
> 3. Did the trial court abuse its discretion when it awarded Wife the marital residence and the furnishings at the residence?
>
> 4. Did the trial court abuse its discretion when it awarded Wife an interest in Husband's non-vested pension benefits?
>
> 5. Did the trial court abuse its discretion in ordering Husband to pay for Wife's COBRA health insurance coverage for 36 months?

---

[1]At oral argument, the appellant withdrew his issue with respect to the trial court's judgment ordering him to maintain Wife as a beneficiary of a portion of his life insurance so long as he had an alimony obligation.

The trial court approved a short statement of the evidence, which is attached as an appendix to this opinion.

This appeal raises issues regarding the trial court's decrees with respect to alimony and the division of the parties' property. The question of whether a spouse is entitled to alimony, and, if so, in what amount and for how long, addresses the sound discretion of the trial court. *Aaron v. Aaron*, 909 S.W.2d 408, 410-11 (Tenn. 1995). By the same token, factually-driven questions regarding an equitable division of marital property are also matters that address the trial court's sound discretion. *Batson v. Batson*, 769 S.W.2d 849, 859 (Tenn.App. 1988). Because of this wide discretion, a trial court's decisions in these two areas are entitled to great weight on appeal. *Id*. While our review is *de novo*, Rule 13(d), T.R.A.P., we embark upon it mindful of these well-established principles.

Wife was married to Husband from her age 31 to age 46. The parties were in a marriage of moderate length--15 years plus. Wife's affidavit reflects that she earns $260 gross per week. This extrapolates to $6.50 an hour based on a 40-hour workweek. Wife's testimony supports a finding that her ability to earn was minimal:

> Wife testified as to her having to pawn her jewelry to pay bills, her need for financial support in submitting her income and expense statement and how many places she had applied and searched for employment after Husband left her. Wife testified that with her lack of recent work experience, lack of training and education (high school graduate) and her age, she could not get a job paying more than $5.00 to $6.00 an hour.

3

Her affidavit reflects that the expenses being paid by her exceed her net income by $397 per month.

On the other hand, Husband's gross earnings in the past three years have averaged $45,568 annually. His affidavit--modified to reflect that his Chapter 13 payment to his trustee is $581, the mortgage payment, rather than $786 as claimed by him--indicates that his net monthly wages of $2,326 exceed his expenses, including the mortgage payment, by approximately $694. The fact that he has accumulated seven years in the Central States, Southeast and Southwest Areas Pension Fund through his truck-driving related employment indicates that his work is relatively stable.

While there are a number of factors for the court to consider in addressing the alimony issues of entitlement, amount, and duration, *see* T.C.A. § 36-5-101(d)(1), the most important of these are the need of the requesting spouse, the ability of the obligor spouse to pay, and relative fault. **Bull v. Bull**, 729 S.W.2d 673, 675 (Tenn.App. 1987). In this case, Wife's need is demonstrated by the proof; Husband has the ability to pay; and the evidence reflects that Husband's fault caused the dissolution of this marriage union. Since the proof does not reflect that Wife can be rehabilitated back to a standard of living approximating or even approaching that previously enjoyed by the parties on their joint, pre-divorce income, the trial court's award of periodic alimony *in futuro* as opposed to rehabilitative

4

alimony is appropriate as "closing in" money for Wife.  *See*
*Aaron*, 909 S.W.2d at 411.

We also find no error in the trial court's decision to
award Wife COBRA health insurance coverage for 36 months at
Husband's expense.  Such coverage is authorized by federal law
and the analysis set forth above regarding general alimony is
equally applicable to this question.

Husband also challenges the trial court's decree that
he make the monthly mortgage payment through May, 1997.  While
the judgment does not reflect whether this payment is to be
construed as alimony or as a part of the division of property, we
believe it can be sustained on either basis.  The proof shows
that Husband has the funds to make these payments; Wife does not.
This obligation is for a limited period of time, after which
these payments will become Wife's responsibility.  At that time,
Wife's alimony entitlement increases from $400 a month to $600.
We find no abuse of discretion in any of this.

Husband contends that the division of marital property
is not equitable.  We will discuss first the division of the
marital property other than Husband's non-vested pension
benefits; we will then analyze this latter asset.

Wife received the marital residence.  The proof
supports a finding that the present equity is worth anywhere from
a negative $3,614 to a positive $1,286.  She received personal
property of an undisclosed value; Husband also received

5

personalty with no value stated.  Wife received a vehicle worth
$200 that is not operable; Husband received a vehicle worth
$3,500.  He retained his credit union account of $650.  The
evidence does not preponderate against the trial court's decree
with respect to this part of the marital property.

With respect to Husband's non-vested pension benefits,
the trial court decreed as follows:

> . . . that Wife shall receive one-third (1/3)
> of the Central States pension plan proceeds
> payable to Husband when he is vested in said
> plan and he is qualified to receive payments
> from the plan under a qualified domestic
> relations order.

As we understand this decree and the Qualified Domestic Relations
Order entered pursuant to the judgment, Wife was awarded one-
third of benefits that will ultimately accrue to Husband by
virtue of his employment during the marriage *as well as* the same
proportion of additional benefits to which he would be entitled
as a result of his employment after the divorce.  We believe
Wife's entitlement was properly set at one-third, in view of the
court's division of the other marital property and the
obligations imposed on Husband to pay alimony and the mortgage
payments; however, we do not agree that Wife is entitled to any
portion of Husband's pension benefits associated with his
employment following the divorce.[2]  T.C.A. § 36-4-121(a)(1) and

---

[2]In ***Kendrick v. Kendrick***, 902 S.W.2d 918, 929 (Tenn.App. 1994), this
court noted that the wife there was not entitled to share in her husband's
benefits accumulated after the divorce:

> Ms. Kendrick's interest in Sergeant Kendrick's pension
> rights must be limited to the rights Sergeant Kendrick
> earned during their marriage.

6

(b)(1)(A) contemplate *only* the equitable division of assets accumulated during the marriage:

> In all actions for divorce . . . , the court having jurisdiction thereof may, . . . equitably divide, distribute or assign the marital property between the parties . . .
>
> \* \* \*
>
> "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage *up to the date of the final divorce hearing* and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired *up to the date of the final divorce hearing*, and valued as of a *date as near as reasonably possible to the final divorce hearing date.*

(Emphasis added). T.C.A. § 36-4-121(a)(1) and (b)(1)(A). We know of no authority sanctioning a division of assets accumulated by a party after the divorce. We conclude that the trial court erred in making such a division.

Accordingly, we vacate that portion of the judgment awarding Wife one-third of Husband's non-vested pension benefits and remand this matter to the trial court so it can craft[3] a new order providing Wife with one-third of Husband's non-vested pension benefits accrued as of the date of the divorce, December 8, 1995. The Qualified Domestic Relations Order (QDRO) of February 7, 1996, is set aside and held for naught. The entry of a new QDRO will await the court's new decree with respect to a

---

[3]For guidance, the trial court's attention is called to our decision in **Kendrick v. Kendrick**, 902 S.W.2d 918 (Tenn.App. 1994).

7

division of this asset.  In all other respects, the trial court's judgment is affirmed.  Exercising our discretion, we assess the costs on appeal to the appellant.


_____
Charles D. Susano, Jr., J.

CONCUR:


_____
Houston M. Goddard, P.J.


_____
Herschel P. Franks, J.