# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

April 29, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

LEROY BRANDON, )
)
    Plaintiff/Appellee, )
)
        Appeal No.
) 01-A-01-9805-CV-00235
VS. )
)    Rutherford Circuit
) No. 36550
ADRIENNE VIVIAN BRANDON, )
)
    Defendant/Appellant. )

### APPEALED FROM THE CIRCUIT COURT OF RUTHERFORD COUNTY
### AT MURFREESBORO, TENNESSEE

### THE HONORABLE ROBERT E. CORLEW, CHANCELLOR

JERRY SCOTT
JOHN KEA
110 City Center Building
100 West Vine Street
Murfreesboro, Tennessee 37133-1216
    Attorneys for Plaintiff/Appellee

KATHRYN G. BRINTON
43 Music Square West
Nashville, Tennessee 37203

JON S. JABLONSKI
2400 Crestmoor Road, Suite 321
Nashville, Tennessee 37215
    Attorneys for Defendant/Appellant

### AFFIRMED IN PART; REVERSED IN PART;
### MODIFIED IN PART; AND REMANDED

BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:
KOCH, J.
CAIN, J.

# OPINION

In this divorce case, the trial court divided the marital assets of the parties, ordered a cash payment from the wife to the husband to equalize the division, and ordered an equal division of certain unvested assets of the wife if and when they mature. We affirm the division of property, but reverse the equalization payment, and we reverse in part and modify in part the division of unvested assets.

## I. Divorce and Property Division

LeRoy Brandon filed a complaint for divorce on April 24, 1996, after sixteen years of marriage to Adrienne Vivian Holmes Brandon. Both parties worked at well-paying jobs during the marriage, and they had accumulated a considerable amount of property, which included real estate, stocks, retirement accounts, furniture, jewelry, vehicles, farming equipment and livestock.

The parties stipulated to grounds during a hearing on September 24, 1997. The trial court issued a final decree granting the divorce to both parties on January 12, 1998. The court awarded the parties their respective bank accounts, pensions, and 401(k) accounts. The husband was awarded the marital home (which was built on land he had jointly owned with his brother), his pickup truck, farming equipment, land and livestock. The wife was awarded a residence she had purchased, using $19,000 she had borrowed from her 401(k) as a down payment, and her Lexus.

The court placed a valuation on each item of property that was thus divided, and ordered the wife to pay the husband $17,379.30 in order to achieve an exactly equal division. The court also ordered that a $15,000 bonus and stock options from the wife's employer, neither of which had yet vested, be equally divided between the parties, if and when they vest.

On appeal, the wife faults the valuation upon which the chancellor based the equalization payment, contending that he failed to take into account the tax consequences flowing from the division of property. She argues that if the tax consequences had been correctly factored in, and if the trial court had not made several erroneous decisions regarding division and debt repayment, the equalization payment necessary to achieve an exactly equal division between the parties would be a payment from the husband to the wife of $31,070.49. She also contends that her unvested assets should not be considered marital property, and thus that it was error to divide them.

## II. Earnings and Assets

At the outset, we must note this is an unusual case in that the parties had to a great extent separated their financial affairs well before separation and divorce. They both had good jobs and made their own financial decisions without consulting with each other. They both held substantial assets in their individual names. No alimony was asked for, and no minor children were involved.

The Brandons had one joint household checking account, but they also maintained separate checking accounts from which they each deposited into the joint account whatever money was needed to meet the monthly household expenses. They did not file joint income tax returns after 1986, but filed separately, because the wife was not comfortable with the way the husband handled the finances for a farming operation he was involved in with his brothers and parents.

During the entire course of the marriage, Adrienne Brandon worked for United Cities Gas Company. She was a corporate officer and executive at the time the parties separated. In 1996 she earned salary income in excess of $75,000. LeRoy Brandon worked first for the Travelers Insurance Company, but in 1991 he

began working for the CNA Insurance Company. His 1996 earnings from his job were in excess of $46,000.

After the parties separated, but before the final decree of divorce, United Cities Gas Company merged with Atmos Energy Company. As part of the merger, Ms. Brandon received a buy-out of her United Cities supplementary executive retirement program in the amount of $189,200. After taxes, she netted $107,601 on the buy-out. Out of that money, she paid debts (including the $19,000 borrowed from her 401(k)), made improvements to her mother's house, and invested $50,000 in a financial services company that she had started in anticipation of a possible downsizing by Atmos. Her 401(k) was worth over $66,000, her United Cities pension was worth over $37,000, and her Atmos energy stocks and vested stock options were worth about $14,700.

Mr. Brandon had a 401(k) account at CNA worth over $41,000, a CNA pension valued at over $19,000, and a Traveler's Insurance Company pension valued at almost $29,000. The farming equipment he owned was worth over $20,000, and his livestock was likewise worth over $20,000. Three pieces of separate property he owned with his brothers appreciated in value during the course of his marriage. His share of that appreciation amounted to over $14,000. The equity in the marital residence, which was awarded to him, was found to have a value of $52,855.

Though the property mentioned above (with the exception of the marital home) was titled individually, all of it meets the definition of marital property found in Tenn. Code Ann. § 36-4-121, because it was acquired during the course of the marriage. Thus the court would have been authorized to divest and reinvest title to that property, and to order it sold, with the proceeds divided between the parties, if that were necessary to achieve an equitable division. Tenn. Code Ann. § 36-4-121(a)(2).

However the trial court correctly found that no such divestment or sale was necessary. The parties had each provided well for their own needs, and they were each awarded property that they had accumulated by their own efforts.

### III. An Equitable Division

Tenn. Code Ann. § 36-4-121(c) sets out the following factors for the court to consider in dividing marital property:

> (1) The duration of the marriage;
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
> (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
> (4) The relative ability of each party for future acquisitions of capital assets and income;
> (5) The contribution of each party to the acquisition, preservation, appreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
> (6) The value of the separate property of each party;
> (7) The estate of each party at the time of the marriage;
> (8) The economic circumstances of each party at the time the division of property is to become effective;
> (9) The tax consequences to each party;  and
> (10) Such other factors as are necessary to consider the equities between the parties.

An equitable division of marital property does not necessarily mean an equal division. *Ellis v. Ellis*, 748 S.W.2d 424, 427 (Tenn. 1988). The chancellor awarded each of the parties property worth in excess of $200,000. Considering the first eight factors listed above, it appears to this court that this division of property is equitable. Though the chancellor did a most careful and conscientious job in valuing the property, it also appears to us that no equalization payment should be required.

It is true that Ms. Brandon thus receives a somewhat larger share than her husband, but this is in line with the relative contribution the parties made to the

- 5 -

acquisition of the marital property. As we indicated above, both parties were relatively free to save and to spend as they saw fit, without interference by the other. It appears from the record that the wife made a somewhat greater contribution to the expenses of the marital household than did the husband, while the husband chose to invest a major portion of his income on a farming operation that lost money every year from 1991 to 1996.

After this division, both parties retain considerable earning power and assets, but Ms. Brandon's financial needs are perhaps greater than Mr. Brandon's. Her new business will require additional capital investment to succeed. Also she has a large mortgage, but very little equity in her new home, while Mr. Brandon is receiving all the equity in the marital home, to which both parties made substantial contributions.

Most of the remaining issues raised by the appellant become moot with the decision to eliminate the equalization payment, for they involve property of relatively small value and are only relevant within the context of an attempt to achieve a perfectly equal distribution. We would like to state in passing, however, that contrary to the appellant's contentions, it appears to us that the chancellor properly took tax considerations into account. We also believe that each party should be responsible for their own debts. Thus, the trial court was correct in ordering the wife to repay the $5,500 she borrowed against the marital home on the home equity line of credit. The husband must likewise repay the money he borrowed against his 401(k), and hold the wife harmless for that debt.

## IV.  The Unvested Assets

As part of the merger agreement between United Cities Gas and Atmos Energy Corp, the CEOs of both organizations agreed that certain employees of United Cities would be entitled to bonuses if they remained employed at Atmos for six months. Ms. Brandon was notified that she would receive a $15,000 bonus if she was

still an employee of Atmos Energy on December 31, 1998. She would also be entitled to stock options if she retained her employment.

The husband argued that both the bonus and the stock options should be considered marital property, subject to division. The trial court agreed, and ordered that the $15,000 bonus be divided equally between the parties when it was received. The court also entered a Qualified Domestic Relations Order to divide the unvested stock options equally.

The wife argued on appeal that those unvested assets were not marital property, and thus were not subject to division. In the alternative, she argued that the trial court erred in dividing the $15,000 before income taxes, ultimately leaving her a lesser share than the husband.

Both parties cite the case of *Cohen v. Cohen*, 937 S.W.2d 823 (Tenn. 1996). In that case, the Supreme Court determined that unvested retirement accounts should be classified as marital property subject to division. The husband argues that the logic the Supreme Court applied in *Cohen* should also be applied to the unvested bonus and stock options at issue here. The wife argues that the holding in *Cohen* was limited to retirement accounts only.

Tenn. Code Ann. § 36-4-121(b)(1)(B) includes in the definition of marital property "the value of vested pension, retirement or other fringe benefit rights accrued during the period of the marriage," but says nothing about unvested rights. The *Cohen* court found Tenn. Code Ann. § 36-4-121(b)(1)(B) to be ambiguous on the question of whether unvested retirement benefits should also be considered marital property subject to division, and searched other parts of the statute to determine the legislative intention.

The Court noted the highly inclusive nature of the language defining marital property at Tenn. Code Ann. § 36-4-121()(1)(A): "'Marital property' means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing . . . ." The Court also observed that unvested pensions were not one of the varieties of property enumerated in the statutory definition of separate property. Tenn. Code Ann. § 36-4-121(b)(2). Finally, the court found that the legislature intended that homemakers undergoing divorce not be deprived of the opportunity to share in property that, although not fully vested, is in many cases the most valuable asset accumulated during the course of the marriage. See *Kendrick v. Kendrick*, 902 S.W.2d 918 (Tenn. App. 1994).

Though Ms. Brandon's bonus was unvested at the time of the final hearing, it was scheduled to vest soon afterwards (in fact, she did receive the bonus). The amount to be paid was never in question, but only whether Ms. Brandon would work at Atmos long enough to be entitled to it. There is no doubt that Ms. Brandon had done most of the work necessary to acquire the bonus during the course of the marriage. Though it is not a retirement account, we believe the bonus should be considered marital property, and we also believe that it would be equitable to divide it between the parties. However, it would be most equitable to divide it after taxes are paid. We therefore direct the chancellor to subtract from the $15,000 the taxes Ms. Brandon will be liable for at her marginal tax rate, and order the payment of one half the remainder to Mr. Brandon.

The stock options require a different treatment. By their terms they are not transferrable. They were scheduled to vest serially as Ms. Brandon continued to work at Atmos, so the rights to some of them were not scheduled to vest until long after the marriage ended. There was no certainty as to what they would be worth when they vested, or whether they would be worth anything, for that depended on the stock price. Finally, even if they vested and were worth something, Ms. Brandon

could not realize their value until she sold the optioned stock, and the decision to sell would be complicated by the requirement of sharing the proceeds. We do not believe unvested property that is so contingent and so speculative should be considered marital property. But even if we did consider the stock options to be marital property, we do not think it would be equitable to award Mr. Brandon a share in them. We therefore vacate the qualified domestic relations order regarding the options.

## V.

The decree of the trial court is affirmed in part, reversed in part, and modified in part. Remand this cause to the Circuit Court of Rutherford County for further proceedings consistent with this opinion. Tax the costs on appeal equally between appellant and appellee.

_____
BEN H. CANTRELL,
PRESIDING JUDGE, MIDDLE SECTION

CONCUR:


_____
WILLIAM C. KOCH, JR., JUDGE


_____
WILLIAM B. CAIN, JUDGE