IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 8, 2009 Session

**RODNEY K. MATTHEWS v. SOPHIA D. MATTHEWS**

**Appeal from the Circuit Court for Montgomery County**
**No. MC-CC-CV-DV-08-36     Michael R. Jones, Judge**

**No. M2009-00413-COA-R3-CV - Filed April 28, 2010**

The trial court granted the wife a divorce after a marriage of almost twenty years, divided the marital property, and awarded the wife temporary alimony. The husband argues on appeal that the court erred in the property division by impermissibly taking his fault into consideration and by dividing his military retirement between the parties without considering the effect of their long separation on the equities of that division. The husband also argues that the court impermissibly awarded the wife alimony *in solido* out of his future earnings rather than out of his separate property. After thoroughly examining the record, we have found no evidence that the trial court based its property division on the husband's fault, and we do not find that it abused its discretion in dividing the military retirement as it did. We also find no indication that the trial court intended its monthly alimony award to be considered alimony *in solido*. We accordingly affirm the trial court, but modify its decree to specify that the award of monthly alimony is in the form of transitional alimony and conversely that the award of attorney fees is alimony *in solido* .

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Carrie W. Gasaway, Clarksville, Tennessee, for the appellant, Rodney K. Matthews.

Michael Kenneth Williamson, Clarksville, Tennessee, for the appellee, Sophia D. Matthews.

# OPINION

## I. A MARRIAGE OF ALMOST TWENTY YEARS

Rodney K. Matthews ("Husband") and Sophia D. Matthews ("Wife") married on July 1, 1989. They became the parents of a daughter on July 4, 1990. Husband was an active duty soldier with the United States Army throughout the entire term of the parties' marriage. Because of Husband's military service, the parties sometimes found themselves far apart during his deployments.

According to Wife's testimony,[1] Husband confessed to her in April of 2000 that he had been involved in an extramarital affair with a military subordinate. Such an indiscretion cannot only spell trouble for a marital relationship, but also for a military career. Wife testified that "[h]e told me that he had only been with her twice and that he wasn't seeing her anymore. So we had agreed to work through it, because his military life was our life, and that was the only source of income, and he said that he would do better and we stayed."

Nonetheless, the damage to the parties' marriage never fully healed. Wife testified that even though she tried to work things out, she no longer loved Husband the way she did before. In 2001, the army sent Husband to Japan. Wife did not go with him, but remained with the parties' child in the marital home in Clarksville. Husband sent money home every month to help Wife with her household expenses. Wife testified that when Husband returned to the States for a visit in 2002, he had bouts of anger, threw things, accused Wife of cheating on him, and frightened the parties' child by pressuring her to "tell me who your mother's boyfriend is." Wife stated that "[h]e never actually received the forgiveness I had given him."

Matters came to a head in August of 2003. Husband was visiting, and he allegedly threatened to take the parties' daughter away if Wife did not join him overseas. A verbal argument escalated into physical confrontation, with Husband pinning Wife down on the couch. After he released her, she noticed that her head was bleeding. Wife went to the emergency room, where she received three stitches around her eye. The parties did not cohabit after that incident.

---

[1]In this account, we must rely almost entirely on Wife's testimony, because Husband did not make an appearance at trial, and no other witnesses testified.

Wife filed a domestic assault charge and a petition for an order of protection. The order of protection was granted.[2] The court also ordered Husband to continue to make regular monthly payments on the mortgage and to maintain insurance on Wife's vehicle. The order of protection expired in September 2004. The court then conducted another hearing and renewed its order to compel Husband to keep making the mortgage and insurance payments.

The proof showed that Husband did not offer to pay child support and that he did not give Wife any regular financial assistance other than the ordered mortgage and insurance payments between August of 2003 and March of 2008, when the court entered a pendente lite child support order as part of the divorce proceedings. The parties had incurred about $32,000 in credit card debt by the time of their final separation in August of 2003. Wife continued to use credit cards for household expenses after that year. By the time of trial the debt in both their names had increased to about $35,000.

When the parties' daughter reached the age of seventeen, she gave birth to a baby boy. The daughter and her child continued to reside with Wife in the marital home, and Wife paid their expenses from her salary as a State employee. Husband continued to pay the mortgage and the auto insurance, but he provided no additional financial assistance to Wife.

## II. DIVORCE PROCEEDINGS

On January 10, 2008, Husband filed a complaint for divorce in the Circuit Court of Montgomery County. The grounds alleged were irreconcilable differences and inappropriate marital conduct on the part of Wife. Wife filed an answer and counter-complaint for divorce. She admitted that irreconcilable differences had arisen between the parties, but denied being guilty of inappropriate marital conduct, and she asserted that Husband's inappropriate marital conduct rendered cohabitation unsafe and improper. She asked the court to grant her custody of the parties' child, and for child support and alimony.

The trial court scheduled a pendente lite hearing and ordered both parties to submit income and expense statements, which they did. Following the hearing, the court ordered Husband to continue to make the parties' regular monthly mortgage payment and to pay child support of $1,063 per month, beginning on March 1, 2008, and continuing through July of 2008, when the parties' child "will have graduated from high school and attained the age of 18 years."

_____

[2]Neither the criminal warrant nor the actual orders of protection obtained by Wife are included in the appellate record.

-3-

The final divorce hearing was scheduled for July 17, 2008, but Husband moved the trial court to continue the hearing date. His attorney explained that Husband could not be present at the scheduled date because he was in Korea and that he expected to return to the United States shortly thereafter. In the interim, Husband's child support obligation was terminated, but he was ordered to continue to make the mortgage payments, and to pay Wife temporary alimony of $1,000 per month.

The final hearing was conducted on January 8, 2009. The attorney for Husband announced at the outset that Husband would not be appearing because "he said he did not have transportation," and the attorney asked the court to allow Husband to testify by telephone. The court stated that it would reserve decision on that request until after Wife testified.[3]

Much of Wife's testimony involved her financial situation. The proof showed that Wife started working for the Tennessee Department of Education in 1999. The income tax returns entered into the record showed that her total gross income ranged from $20,316 in 2002 to $27,619 in 2008. Wife testified that her income was not sufficient to cover her household bills, even with Husband paying the mortgage, and that at times she had to use credit cards to fill in the gaps.

Husband's attorney submitted his new income and expense statement, which was admitted into evidence without objection by Wife's attorney. The statement lists Husband's gross monthly wages as $6,319 in September of 2008, which comes to $75,828 over twelve months. Husband's monthly take home pay after deductions was stated to be $5,432. His listed expenses add up to $5,760, resulting in a presumptive monthly deficit. The expenses listed included $600 in "Tithes and Offering" and $1,500 in "Personal Loans." There is no explanation in the record about the reason for the loans, and the alleged creditors are not identified.

The record also contains Husband's hand-written income and expense statement which was prepared for the March 2008 pendente lite hearing. That statement lists

---

[3]There was no suggestion by Husband's attorney that his client was out of the country at the time of the final hearing, and no further information was offered as to why he was unable to attend. His voluntary absence made it possible for Wife's attorney to invoke the "missing witness rule," a common-law rule which provides that "the failure of a party to call a witness gives rise to a permissible inference that the missing witness's testimony would have been unfavorable to the party who failed to call the witness." *State v. Francis,* 669 S.W.2d 85, 88 (Tenn.1984)).

Husband's gross monthly income as $7,742, which comes to $92,904 over twelve months.[4] His monthly take home pay was stated to be $6,941. Listed expenses (including the same sums for "Tithes and Offering" and "Personal Loans") add up to $6,005, resulting in a presumptive monthly surplus. Since Husband did not appear at trial to testify, it was not possible to question him about the discrepancies between his two statements.

The proof showed that the parties did not accumulate very much in the way of marital property during the course of their marriage. In fact, the only property of any significance were two vehicles, the equity in the marital home with a value of about $35,000, Wife's 401(k) retirement account with the State, which had a total value of about $7,680 at the time of the hearing, Wife's rights to a state pension which the proof showed she would be ineligible to draw upon until March 3, 2028, and Husband's military retirement package. The exact value of Husband's retirement could not be ascertained at the time of trial, but it was presumably quite substantial, in view of his many years in the service and the size of his most recent paychecks.

The proof indicates that Husband retired from the service as of January 1, 2009 with the rank of Master Sergeant. As a result of his 28 year military career, he is not only entitled to a pension, but to free lifetime healthcare. There is nothing in the record to indicate that Husband's retirement was anything other than voluntary. Wife's attorney points out that if Husband had waited just six more months before retiring, Wife would have qualified to be a "20/20 spouse," meaning that she would also have been entitled to receive free lifetime health care and lifetime dental care. Wife is currently covered by health insurance as a state employee, but a monthly premium is taken out of her paycheck to pay for it.

At the conclusion of testimony, Husband's attorney renewed his motion to allow his client to testify by telephone. The trial court denied the motion. At the close of the trial, the court announced its decision from the bench. The court confessed itself somewhat perplexed by the inconsistent and incomplete evidence about Husband's income. It nonetheless concluded that Husband's financial resources were far greater than Wife's and that Husband had in effect abandoned his daughter and his wife by making such meager financial contributions to their welfare in the years between 2003 and 2008. The court accordingly awarded Wife an absolute divorce on the ground of inappropriate marital conduct.

---

[4]Another document in the record is Husband's Certificate of Discharge from Active Duty. It includes an earning statement that seems to indicate that in 2008, Husband's final year of service, his income was $92,564.75 and his deductions were $12,028.30.

The court's decision, including its determination of division of marital property and alimony, is documented in an order entered on February 19, 2009. The court awarded Wife the marital home and all the equity in it, her state pension and her 401(k), and, most significantly for the issues on appeal, "thirty-five percent (35%) of the Husband's total military retirement benefit, representing one half (1/2) of the nineteen point six (19.6) years that this marriage overlapped the Husband's military service of twenty-eight (28) years."

The court also ordered Wife to pay the outstanding credit card debt, but ordered Husband to pay Wife $16,000 to apply towards the debt.[5] Husband was also ordered to pay Wife alimony in the amount of $1,500 per month for a period of sixty months, and $5,000 to help Wife pay the attorney fees she incurred in the divorce. Referring to the attorney fee award, the trial court stated, "[s]uch sum shall represent transitional alimony for the benefit of the Wife to assist her in her transition to a single person." This appeal followed.

### III. PROPERTY DIVISION

In all actions for divorce or legal separation, the courts are directed to ". . . equitably divide, distribute, or assign the marital property between the parties without regard to marital fault in proportions as the court deems just." Tenn. Code Ann. § 36-4-121(a)(1). Marital property includes ". . .all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of the filing of a complaint for divorce . . ." Tenn. Code Ann. § 36-4-121(b)(1)(A).

Husband argues that the trial court in this case erred by taking his fault into consideration when it divided the marital property.[6] Even though the trial court did find him to be at fault with regard to grounds for divorce, Husband can point to nothing in the record (nor have we found anything in our own examination of the record) to indicate that the court based its division of property upon that fault. Husband bases his contention solely on the fact that Wife was awarded such a large proportion of the marital property and on his own feeling that such a division was inequitable as to him.

---

[5]The court stated that it would have preferred to order Husband to pay half of the debt. But in light of his failure to show up at trial, the court could not be confident that he would comply, so it ordered him to pay Wife instead.

[6]We note that even though the statute prohibits the courts from considering fault when dividing marital property, they are permitted to consider need. *Fisher v. Fisher*, 648 S.W.2d 244, 247 (Tenn. 1983).

In determining what constitutes an equitable division of marital property, the court is directed to consider the factors set out in Tenn. Code Ann. § 36-4-121(c):

> In making equitable division of marital property, the court shall consider all relevant factors including:
> (1) The duration of the marriage;
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
> (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
> (4) The relative ability of each party for future acquisitions of capital assets and income;
> (5) The contribution of each party to the acquisition, preservation, appreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled his or her role;
> (6) The value of the separate property of each party;
> (7) The estate of each party at the time of the marriage;
> (8) The economic circumstances of each party at the time the division of property is to become effective;
> (9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;
> (10) The amount of social security benefits available to each spouse; and
> (11) Such other factors as are necessary to consider the equities between the parties.

The court noted that because of Husband's failure to appear at trial it had to make its rulings "somewhat in a vacuum." There is no proof in the record that would be relevant to many of the listed factors. Nonetheless, the available evidence does indicate that after a marriage of almost twenty years, Husband's prospects for future acquisitions of capital assets and income are far better than those of Wife, as are his overall economic circumstances.

Husband was 45 years old at the time of the divorce. Because of his years of service and the level of income he has been receiving for that service, he is eligible to collect what has to be a substantial amount of military retirement pay. Additionally, as the court observed, there is no evidence that Husband is unemployable. It also appears that Husband's work in the military as a dining facilities manager has left him with experience and skills of potential

income-producing value within the civilian economy.

Wife attended junior college for two years. She works as an administrative secretary for the Tennessee Department of Education. As a State employee, her job offers many valuable benefits including affordable health insurance, but it does not pay very much. Wife testified that better-paying jobs are not available in Clarksville for someone like her. Thus, the prospects for future improvements in her economic circumstances are limited.

Husband objects to many elements in the trial court's division of marital property, including its division of his military retirement income. We note that any interest in a retirement benefit, vested or unvested, that accrues during a marriage, is marital property subject to division. *Cohen v. Cohen,* 937 S.W.2d 823, 828 (Tenn. 1996); *Batson v. Batson*, 769 S.W.2d 849 (Tenn. Ct. App. 1988). Military pension rights are not excluded from such division. *Kendrick v. Kendrick,* 902 S.W.2d 918 (Tenn. Ct. App. 1994).

In cases where the amount of the pension depends on years of service (such as in the military) and those years overlap the marriage, the ratio between the years of marriage during which the pension accrued and the total number of years of accrual gives us the most common formula for calculating what proportion of the pension should be considered as marital property. *Kendrick v. Kendrick,* 902 S.W.2d at 927, fn. 17.

In the present case, the trial court noted that the parties had been married for 19.6 years during Husband's 28 year military career, and it accordingly calculated that 70% of Husband's military retirement was marital property. The court awarded Wife half of that marital property, or 35% of Husband's total military retirement. Husband argues that the trial court's method was flawed because it should not have included the years 2003-2008 in its calculation, since the parties were separated during that period. He calculates that if the court had excluded those years and applied the same 50% division to the resulting proportion of his service, it would have awarded Wife 21.5% of his military retirement rather than 35%.

However, marital property is defined in Tenn. Code Ann. § 36-4-121(b)(1)(A) as including "all property . . . acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing." There is no exclusion from that definition for property acquired during the separation of the parties. Accordingly, the trial court correctly calculated the marital property portion of Husband's pension. However, the trial court has latitude in dividing the marital component of a pension entitlement where the equities of the situation point to something other than a 50/50 division. The court is charged with reaching an equitable division of marital property, which is not necessarily an equal division. *Ellis v. Ellis,* 748 S.W.2d 424, 427 (Tenn. 1988); *Watters v. Watters*, 959 S.W.2d 585, 591 (Tenn. Ct. App. 1997); *Harrington v. Harrington*, 798 S.W.2d 244, 245 (Tenn. Ct.

App. 1990).

In this case, the trial court did not believe that the separation of the parties warranted a reduction in Wife's share of Husband's military retirement. The trial courts have broad discretion in dividing the marital estate in order to reach an equitable result, and their decisions in such matters are entitled to great weight on appeal. *Kinard v. Kinard,* 986 S.W.2d 220, 230 (Tenn. 1998); *Fisher v. Fisher,* 648 S.W.2d 244, 246 (Tenn. 1983); *Mondelli v. Howard,* 780 S.W.2d 769, 772 (Tenn. Ct. App. 1989). In light of the respective financial circumstances of the parties, we cannot conclude that the trial court abused its discretion by dividing Husband's military retirement as it did.

Husband also argues that the trial court should have ordered Wife to refinance the mortgage on the marital home and awarded him half of the resulting equity, awarded him one-half of Wife's 401(k), and made her responsible for all the credit card debt. As we noted above, the division of a marital estate is not rendered inequitable simply because it is not mathematically equal. *Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Ellis v. Ellis*, 748 S.W.2d at 427; *Manis v. Manis*, 49 S.W.2d 295, 306 (Tenn. Ct. App. 2001). Also, the courts are not required to award to each party a share of every item of marital property. *Kinard v. Kinard*, 986 S.W.2d at 230; *Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994).

In the final analysis, the justness of a particular division of the marital property and allocation of marital debt depends on its final results. *Watters v. Watters*, 959 S.W.2d at 591; *Thompson v. Thompson*, 797 S.W.2d 599, 604 (Tenn. Ct. App. 1990). For Wife, the final result of the property division in this case is to enable her, her daughter and her grandson to remain in the marital home without increasing the amount of her mortgage obligation, to allow her to keep a very modest retirement account intact, and to give her assistance on paying down a crippling amount of debt.

The impact of the property division on Husband is not as easy to determine. Because he declined to appear at trial, he could not be questioned about any assets he may have acquired between 2003 and 2008, when he was earning substantially more than Wife, while making minimal payments for her support and none for the support of his child. The trial court stated that on the basis of that income, "It's my belief that Mr. Matthews should have substantial cash assets."

Husband also could not be questioned about the exact amount of the monthly check from his military retirement. Nonetheless, the evidence indicates that his lifetime entitlement to a regular retirement check is more valuable by far than any other asset divided by the court. Since Husband will retain almost two-thirds of this asset, he should not be heard to

complain about the court's decision to allow Wife to keep other property acquired during the course of the marriage. In sum, we find that the final results of the property division are equitable and that the trial court did not abuse its discretion in dividing the marital property as it did.

## IV. ALIMONY

Our legislature has authorized the courts to award alimony in divorce cases "to be paid by one spouse to or for the benefit of the other, or out of either spouse's property, according to the nature of the case and the circumstances of the parties." Tenn. Code Ann. § 36-5-121(a). To guide the courts in determining whether an award of alimony is appropriate, and the nature and amount of that award, the legislature has set out a list of factors for the trial courts to consider. Tenn. Code Ann. § 36-5-121(i). The list includes many of the same factors used to guide the court in its division of marital property.

One major difference is that in determining alimony, the court may consider "[t]he relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so." Tenn. Code Ann. § 36-5-121(i)(11). However, while fault is a factor to be considered, it must not be applied for the purpose of punishing the guilty spouse. *Fisher v. Fisher*, 648 S.W.2d at 246; *Wilder v. Wilder,* 66 S.W.3d at 892, 895 (Tenn. Ct. App. 2001). *Gilliam v. Gilliam,* 776 S.W.2d 81, 86 (Tenn. Ct. App. 1988).

In determining the appropriateness of an award of alimony, the most important factors for the courts to consider are the need of the obligee spouse and the obligor's spouse's ability to pay. *Martin v. Martin,* 155 S.W.3d 126, 131 (Tenn. Ct. App. 2004); *Barnhill v. Barnhill,* 826 S.W.2d 443, 455 (Tenn. Ct. App. 1991). The amount of an alimony award is deemed to be in the sound discretion of the trial court, and it will not be reversed on appeal unless that discretion is abused. *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001); *Morton v. Morton*, 182 S.W.3d 821, 836 (Tenn. Ct. App. 2005); *Lindsey v. Lindsey*, 976 S.W.2d 175, 180 (Tenn. Ct. App. 1997).

Tennessee currently recognizes four different kinds of alimony: rehabilitative alimony, alimony *in futuro* or periodic alimony, transitional alimony and alimony *in solido*. Tenn. Code Ann. § 36-5-121(d)(1). Alimony *in solido* can be distinguished from the other types of alimony because it is for a definite sum of money, payable in full regardless of future events. If alimony *in solido* is ordered, it may not be modified once the order becomes final. *Bray v. Bray,* 631 S.W.2d 135, 139 (Tenn. Ct. App. 1981). Alimony *in solido* is generally paid out of marital assets or out of the separate assets of the obligor. It may be payable either as a lump sum or in installments.

Until recent years, the only other type of alimony the courts were authorized to award was alimony *in futuro*, or periodic alimony, which is "a payment of support or maintenance on a long term basis or until the death or remarriage of the recipient." Tenn. Code Ann. § 36-5-121(f)(1). Alimony *in futuro* remains within the control of the trial court, "and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change of circumstances." Tenn. Code Ann. § 36-5-121(f)(2)(A).

The other two types of alimony, rehabilitative alimony and transitional alimony, differ from alimony *in futuro* by being ordered for "a determinate period of time." But like alimony *in futuro* (and unlike alimony *in solido*), they remain within the court's control and may be modified at any time. Rehabilitative alimony, like alimony *in futuro*, may be modified "upon a showing of substantial and material change of circumstances." Tenn. Code Ann. § 36-4-121(e)(2). Transitional alimony may only be modified if specific conditions are met. Tenn. Code Ann. § 36-4-121(g)(2). The question of modification is not before us, but only the question of the proper classification of the alimony award in this case.

Husband's challenge to the trial court's alimony award is based upon an inaccurate characterization of that award: He contends that the trial court ordered him to pay Wife $95,000 as alimony *in solido* out of his future earnings. He then cites several cases which stand for the proposition that alimony *in solido* should generally be awarded out of a spouse's estate, not out of an expectation of future earnings. *Goodman v. Goodman*, 8 S.W.3d 289, 297 (Tenn. Ct. App. 1999); *Day v. Day*, 931 S.W.2d 936 (Tenn. Ct. App. 1996). Finally, he argues that the court's division of marital property did not leave his estate with sufficient resources to pay Wife $95,000.

When we examine the transcript of the record and the trial court's final order, we can find no support for that argument. The court ordered Husband to pay Wife $1,500 per month in alimony for sixty months. It did not specifically state which form of alimony it intended. It also awarded Wife $5,000 to help her pay her attorney fees. The court stated that the $5,000 award "shall represent transitional alimony for the benefit of the Wife to assist her in her transition to a single person."

The trial court correctly stated that the purpose of transitional alimony is to help the disadvantaged spouse in his or her transition to the status of a single person. While the trial court did not specifically characterize the sixty months of alimony as transitional, we believe that was merely an oversight and that the award meets the definition of transitional alimony. In light of the entire record of this case, it appears to us that Wife needs a substantial amount of transitional alimony so she can pay off the rest of her debts and stabilize her finances. Accordingly, we affirm the trial court's award of alimony and deem that award to be transitional alimony.

-11-

The award of attorney fees stands on a different footing. Such an award in divorce cases is treated as a form of alimony, and in determining whether an award of attorney fees is appropriate, the court should again consider the relevant factors in Tenn. Code Ann. § 36-5-121(i), including the needs of the obligee spouse. Attorney fees are usually due and payable upon the completion of a case, so it is appropriate to award such fees where the obligee spouse does not have a sufficient amount of liquid assets to pay the attorney. See *Umstot v. Umstot*, 968 S.W.2d 819, 824 (Tenn. Ct. App. 1997); *Duncan v. Duncan*, 686 S.W.2d 568, 573 (Tenn. Ct. App. 1984). Because the bill of an attorney is for a sum certain, an award of attorney fees in divorce cases is usually characterized as alimony *in solido*. *Owens v. Owens*, 241 S.W.3d 478, 495 (Tenn. Ct. App. 2007); *Yount v. Yount,* 91 S.W.3d 777, 783 (Tenn. Ct. App. 2002); *Wilder v. Wilder,* 66 S.W.3d at 894.

Most of the property awarded to Wife in the present case cannot be used to pay her attorney fees. She cannot obtain access to the equity in her house unless she refinances or takes out a second mortgage. She would have to pay taxes and a penalty if she liquidated her 401(k) before reaching the age of 59 1/2. She will not be eligible for her retirement benefit until the year 2028. Her share of Husband's military retirement pay will be paid to her in monthly installments rather than in a lump sum. There was no proof that she had any cash or any money in a savings account. Thus, in light of her evident need, her lack of separate liquid assets, and of husband's fault in the divorce, we find that the trial court did not abuse its discretion by awarding Wife $5,000 in attorney fees, but we hold that it should have characterized the award as alimony *in solido* rather than as transitional alimony.

## V.

The order of the trial court is affirmed, but it is modified by specifying that the court's award to Wife of monthly support is in the nature of transitional alimony and by changing the classification of its award to Wife of $5,000 in attorney fees from transitional alimony to alimony *in solido*. We remand this case to the Circuit Court of Montgomery County for any further proceedings necessary. Tax the costs on appeal to the appellant, Rodney K. Matthews.

_____
PATRICIA J. COTTRELL, JUDGE