IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 26, 2024 Session

## ROBERT CHRISTOPHER WALTON v. REBECCA GUESS WALTON

**Appeal from the Circuit Court for Shelby County**
**No. CT-005019-15  Rhynette N. Hurd, Judge**

_____

**No. W2023-00988-COA-R3-CV**

_____

In this post-divorce matter, the parties dispute the interpretation of a provision of their marital dissolution agreement ("MDA") concerning one of Husband's retirement plans. On the parties' cross petitions to enforce the MDA, the trial court found the MDA to be unambiguous and agreed with Wife's interpretation of the disputed provision. Discerning no error, we affirm. Wife's request for appellate attorney's fees and costs is granted pursuant to the terms of the MDA; her request for frivolous appeal damages is denied.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Jana Davis Lamanna and Stanley N. Medlin, Memphis, Tennessee, for the appellant, Robert Christopher Walton.

Kay Farese Turner and Stephanie M. Micheel, Memphis, Tennessee, for the appellee, Rebecca Guess Walton.

## OPINION

### I. Background

On January 24, 2018, Appellant Robert Christopher Walton ("Husband") and Appellee Rebecca Guess Walton ("Wife") entered into a marital dissolution agreement (the "MDA"). On January 29, 2018, the MDA was filed in the Circuit Court of Shelby County

(the "trial court").  On April 9, 2018, the trial court entered the final decree of divorce, which incorporated the MDA in its entirety.  Relevant here, the "Division of Marital Property" section of the MDA provided, in pertinent part:

**2. Division of Marital Property:** The parties acknowledge that there has been a full disclosure of all assets and values, and both parties are satisfied that the values assigned to the marital assets herein are acceptable and agreeable to each party and that they arrived at an agreement as to the division of all marital assets at mediation. The parties agree that the marital estate shall be equitably divided as follows:

I. Husband's FERS Basic Benefit Plan: Wife is to receive one-half ~~of the marital portion~~ *BRW RCW* of Husband's gross monthly annuity (gross monthly annuity is to be defined as the "unreduced monthly annuity" less the monthly cost of the survivor benefit which the *BRW RCW* parties will be equally sharing.) THE PARTIES ACKNOWLEDGE THAT SUCH PLAN IS FULLY VESTED AT THE TIME OF EXECUTING THIS MDA.

("Paragraph 2(I)").

On January 30, 2020, Husband filed a petition for enforcement of the MDA and for attorney's fees and expenses (the "Petition").  Paragraph 7 of the Petition stated:

7. [Wife] now conveniently interprets Paragraph 2(I) to mean that she is to receive one-half of Husband's gross monthly annuity, including his post-marital contributions.  However, at the time of the execution, [Wife] advised that she wanted to remove "the marital portion" language since Husband was fully vested in the Plan at the time of the divorce.

Paragraph 7 of the Petition contained a footnote that discussed the parties' negotiations concerning Paragraph 2(I).  In the footnote, Husband cited Exhibits A, B, and C, which were attached to Petition.  These exhibits were comprised of letters between the parties' attorneys with attached drafts of the MDA.  In the Petition, Husband asked the trial court to enter an order allocating Wife only her marital portion of the annuity.

On February 28, 2020, Wife filed a motion to strike and for attorney's fees.  Therein, Wife argued that Husband was not seeking to enforce the MDA but was seeking to modify it.  Wife alleged that the trial court should strike anything that was immaterial or impertinent from the Petition.  She argued that the exhibits containing the letters between the parties and the drafts of the MDA were statements made in negotiation, which would not be admissible at trial, and were immaterial or impertinent.  Thus, she asked the trial court to strike Paragraph 7, footnote 1, and the exhibits, discussed *supra*.  Wife also asked for attorney's fees and litigation expenses.  On July 10, 2020, Husband filed a response to

the motion to strike.

On July 10, 2020, the trial court heard the motion to strike and orally granted it. On March 2, 2022, nearly two years later, the trial court entered a written order granting the motion to strike. Therein, the trial court ruled that the terms of the MDA were unambiguous and that no parol evidence would be considered when enforcing the MDA. The trial court further found that the MDA contained an integration clause stating that the parties agreed that the MDA contained their entire agreement. Accordingly, the trial court struck Paragraph 7, footnote 1, and Exhibits A, B, and C from the Petition.

On July 8, 2021, Wife filed a counter petition to enforce the MDA, for citation of civil contempt of court, and for attorney's fees and expenses (the "Counter Petition"). Therein, Wife asked the trial court to enforce the MDA and allow a third-party attorney to draft a Qualified Domestic Relations Order ("QDRO") dividing the entirety of Husband's FERS Basic Benefit Plan "pursuant to the specific terms of the MDA which provided for that division." Wife also asked that the trial court hold Husband in civil contempt for intentionally and willfully refusing to take the steps necessary to allow the attorney to draft the QDRO. Wife also asked for an award of attorney's fees and litigation expenses. On May 11, 2022, Husband filed a response to the counter petition and petition for contempt.

Following a hearing on May 12, 2022, on June 23, 2022, the trial court entered an "Order on Husband's Petition for Enforcement of Marital Dissolution Agreement and for Attorney Fees and Expenses and Wife's Counter-Petition to Enforce Marital Dissolution Agreement, Petition for Citation of Civil Contempt of Court, and for Attorney Fees and Expenses." Therein, the trial court: (1) denied Husband's Petition; (2) confirmed that Paragraph 2(I) of the MDA was unambiguous and, as such, found that parol evidence could not be introduced or considered; (3) determined that, under the MDA, Wife was entitled to receive one-half of Husband's gross monthly annuity and ordered that a QDRO be prepared to accomplish dividing the entirety of the account; and (4) awarded Wife attorney's fees and expenses totaling $14,944.88. Although it is listed in the title of the order, the trial court made no ruling on Wife's petition to hold Husband in civil contempt.

On July 22, 2022, Husband filed a motion to alter or amend the trial court's order. On August 2, 2022, Wife filed a response to the motion to alter or amend. On February 17, 2023, the trial court heard the motion to alter or amend, and, by order of June 6, 2023, the trial court denied the motion. The trial court again made no ruling on Wife's request to hold Husband in civil contempt. On July 6, 2023, Husband filed a timely appeal.

On July 16, 2024, this Court entered an order concerning Wife's outstanding petition for civil contempt. Therein, we concluded that, due to the outstanding petition, the trial court had yet to enter a final judgment, and we did not have jurisdiction to hear the appeal. Husband was directed to obtain a final judgment in the trial court as to all claims against all parties. On September 30, 2024, the trial court entered an "Amended and Final

Order on Husband's Petition for Enforcement of Marital Dissolution Agreement and for Attorney Fees and Expenses and Wife's Counter-Petition to Enforce Marital Dissolution Agreement, Petition for Citation of Civil Contempt of Court, and for Attorney Fees and Expenses" (the "Amended Order"). Concerning the trial court's previous holdings, discussed above, the Amended Order is identical to the previous order. However, the amended order also dismissed Wife's petition for civil contempt against Husband and certified the Amended Order as final. Accordingly, this Court has jurisdiction to consider the appeal.

## II. Issues

Husband raises two issues for our review, as stated in his brief:

1. Whether the [t]rial [c]ourt committed reversable error when it determined that the [p]arties' Marital Dissolution Agreement was unambiguous and subsequently prohibited parol[] evidence.

2. Whether the [t]rial [c]ourt committed reversable error when it awarded [Wife] her attorney['s] fees for expenses incurred in litigating [Husband's] Petition for Enforcement of Marital Dissolution Agreement and for Attorney Fees and [Wife's] Counter-Petition to Enforce Marital Dissolution Agreement, Petition for Citation of Civil Contempt of Court, and for Attorney's Fees and Expenses.

Wife asks this Court to award her attorney's fees, suit expenses, and frivolous appeal damages related to this appeal.

## III. Analysis

### A. Unambiguous MDA

The law concerning how we interpret the parties' MDA is well-established. This Court has explained:

> In Tennessee, MDAs are treated as contracts and are subject to the rules governing construction of contracts. *See* Barnes v. **Barnes**, 193 S.W.3d 495, 498 (Tenn. 2006); **Honeycutt v. Honeycutt**, 152 S.W.3d 556, 561 (Tenn. Ct. App. 2003). To the extent our analysis requires interpretation or application of the parties' MDA, we note that "interpretation of a contract is a matter of law, [and] our review is de novo on the record with no presumption of correctness . . . ." **Honeycutt**, 152 S.W.3d at 561 (quoting **Witham v. Witham**, No. W2000-00732-COA-R3-CV, 2001 WL 846067, at *3 (Tenn. Ct. App. July 24, 2001)). In **Kafozi v. Windward Cove, LLC**, 184 S.W.3d

693 (Tenn. Ct. App. 2005), *perm. app. denied* (Tenn. Jan. 30, 2006), this Court explained that

> [i]n resolving a dispute concerning contract interpretation, our task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contract language. ***Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.***, 78 S.W.3d 885, 889-90 (Tenn. 2002) (citing ***Guiliano v. Cleo, Inc.***, 995 S.W.2d 88, 95 (Tenn. 1999)). A determination of the intention of the parties "is generally treated as a question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left for a jury to decide." ***Planters Gin Co.***, 78 S.W.3d at 890 (citing 5 Joseph M. Perillo, *Corbin on Contracts*, § 24.30 (rev. ed. 1998); ***Doe v. HCA Health Servs. of Tenn., Inc.***, 46 S.W.3d 191, 196 (Tenn. 2001)). The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern. ***Planters Gin Co.***, 78 S.W.3d at 890. The parties' intent is presumed to be that specifically expressed in the body of the contract. "In other words, the object to be attained in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used and to give effect to such intent if it does not conflict with any rule of law, good morals, or public policy." ***Id.*** (quoting 17 Am. Jur. 2d, Contracts, § 245).
>
> This Court's initial task in construing the [c]ontract at issue is to determine whether the language of the contract is ambiguous. ***Planters Gin Co.***, 78 S.W.3d at 890. If the language is clear and unambiguous, the literal meaning of the language controls the outcome of the dispute. ***Id.*** A contract is ambiguous only when its meaning is uncertain and may *fairly* be understood in more than one way. ***Id.*** (emphasis added). If the contract is found to be ambiguous, we then apply established rules of construction to determine the intent of the parties. ***Id.*** Only if ambiguity remains after applying the pertinent rules of construction does the legal meaning of the contract become a question of fact. Id.

*Kafozi*, 184 S.W.3d at 698-99.

*Parsons v. Parsons*, No. W2018-02008-COA-R3-CV, 2019 WL 6770520, at *3-4 (Tenn.

- 5 -

Ct. App. Dec. 12, 2019).

On appeal, Husband cites **Kendrick v. Kendrick**, 902 S.W.2d 918, 926-27 (Tenn. Ct. App. 1994) and **Cohen v. Cohen**, 937 S.W.2d 823, 830 (Tenn. 1996) for the proposition that Wife "is only entitled to portions of the FERS account that accrued during the marriage." That would be true had Husband not voluntarily contracted to provide Wife with *more* than what she would have been entitled to under the statute. *See* Tenn. Code Ann. § 36-4-121(b)(2)(B)(ii) ("'Marital property' includes the value of vested and unvested pension benefits, vested and unvested stock option rights, retirement, and other fringe benefit rights accrued as a result of employment during the marriage[.]"). Indeed, this Court has explained that "notwithstanding whatever potential relief might otherwise be available generally as a matter of statute, the parties' agreement should take precedence." **Vick v. Hicks**, No. W2013-02672-COA-R3-CV, 2014 WL 6333965, at *4 (Tenn. Ct. App. Nov. 17, 2014); *see also* **Holt v. Holt**, 751 S.W.2d 426, 428 (Tenn. Ct. App. 1988) ("Parties should be free to obligate themselves by agreement beyond what the courts could order them to do as a matter of law.").

We recall the language in Paragraph 2(I):

I. <u>Husband's FERS Basic Benefit Plan</u>: Wife is to receive one-half ~~of the marital portion~~ *BBW RCW* of Husband's gross monthly annuity (gross monthly annuity is to be defined as the "unreduced monthly annuity" less the monthly cost of the survivor benefit which the *RBW RCW* parties will be equally sharing.) THE PARTIES ACKNOWLEDGE THAT SUCH PLAN IS FULLY VESTED AT THE TIME OF EXECUTING THIS MDA.

From the plain language employed by the parties, we conclude that there is no ambiguity in Paragraph 2(I), and it can be interpreted in only one way. *See* **Planters Gin Co.**, 78 S.W.3d at 890. The MDA clearly awards Wife one-half of Husband's gross monthly annuity, with gross monthly annuity being defined as the "unreduced monthly annuity" less the monthly cost of the survivor benefit, which the parties would share equally. The language that follows, *i.e.,* "The parties acknowledge that such plan is fully vested at the time of executing this MDA," indicates that the parties understood Husband's benefits to be fully vested, *i.e.,* he had a current or future right to them at the time of divorce. Accordingly, we conclude that the language of the MDA clearly shows Husband's intent to relinquish one-half of these benefits to Wife as part of the divorce settlement. Contrary to Husband's argument, there is no language in the MDA to suggest that Wife would receive only the portion of the retirement account that accumulated during marriage. Indeed, the parties' striking "of the marital portion" from the MDA shows the opposite— that Wife would receive one-half of the entirety of Husband's annuity, not simply one-half of the "marital portion." Therefore, we agree with the trial court's holding that Paragraph 2(I) is clear and unambiguous, and the language used therein controls the outcome of this case. *Id.* As such, we affirm the trial court's conclusion that Wife is entitled to receive one-half of Husband's gross monthly annuity from his FERS account.

## B. Attorney's Fees

As discussed above, the trial court awarded Wife attorney's fees and expenses incurred in litigating Husband's noncompliance with the MDA. It is well-established that parties may contract for attorney's fees in an MDA. *See **Eberbach v. Eberbach***, 535 S.W.3d 467, 474-75 (Tenn. 2017). Paragraph 15 of the MDA provided:

> **15. Non-Compliance: *Should either party incur any expense or legal fees as a result of the breach or noncompliance of [the MDA], should either party be caused to file a Petition for specific enforcement and/or contempt of court relative to this Agreement, or should either party otherwise be caused to litigate to collect from a party***, estate, or third party ***any sums or property to be transferred or received herein consistent with any portion of this Agreement***, whether statutory, contractual, or otherwise, or upon appellate review, ***the Court shall award all reasonable attorney fees and suit expenses to the non-defaulting party***. No breach, waiver, or default or any of the terms of this Agreement shall constitute a waiver of any subsequent breach or default of any of the terms of this Agreement.

(Emphases added). Here, the parties' MDA clearly instructs courts to award reasonable attorney's fees and expenses to the non-defaulting party when that party incurs expenses or legal fees due to the other party's breach. Because Husband breached the MDA by refusing to take the steps necessary to divide the FERS account as provided in the MDA, the trial court did not err in awarding Wife her reasonable attorney's fees incurred in her effort to enforce the MDA.

On appeal, Wife asks this Court to award her attorney's fees, expenses, and frivolous appeal damages related to this appeal. Concerning frivolous appeal damages, Tennessee Code Annotated section 27-1-122 provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Tenn. Code Ann. § 27-1-122. "An appeal is frivolous when it has 'no reasonable chance of success,' ***Jackson v. Aldridge***, 6 S.W.3d 501, 504 (Tenn. Ct. App. 1999), or is 'so utterly devoid of merit as to justify the imposition of a penalty.'" ***Whalum v. Marshall***, 224 S.W.3d 169, 181 (Tenn. Ct. App. 2006) (quoting ***Combustion Eng'g, Inc. v. Kennedy***, 562 S.W.2d 202, 205 (Tenn. 1978)). Whether we award frivolous appeal damages rests solely in this Court's discretion, ***Chiozza v. Chiozza***, 315 S.W.3d 482, 493 (Tenn. Ct. App. 2009),

and we exercise such discretion "sparingly so as not to discourage legitimate appeals." *Whalum*, 224 S.W.3d at 181. Based on our review of the record and in the exercise of our discretion, we decline to award damages on the basis of frivolous appeal. However, as discussed above, under the MDA, Wife is entitled to her reasonable attorney's fees and expenses incurred in defending this appeal. As such, we grant her request for appellate attorney's fees and costs pursuant to the MDA.

## IV. Conclusion

For the foregoing reasons, we affirm the trial court's order. Wife's request for appellate attorney's fees and expenses is granted. The case is remanded to the trial court for further proceedings as may be necessary and are consistent with this opinion, including determination of Wife's reasonable appellate attorney's fees and expenses and for entry of judgment on same. Costs of the appeal are assessed to the Appellant, Robert Christopher Walton. Execution for costs may issue if necessary.


    s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE